STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. JUAN RAMON MULERO, DEFENDANT-APPELLANT.

Argued December 19, 1967—Decided February 19, 1968.

*Mr. Jack Rinzler* argued the cause for appellant.

*Mr. Archibald Krieger,* Assistant Prosecutor, argued the cause for respondent (*Mr. John G. Thevos,* Passaic County Prosecutor, attorney).

The opinion of the court was delivered

PER CURIAM. Defendant appeals from a judgment entered upon a jury's verdict of murder in the second degree.

Defendant lived as man and wife with a Mrs. Maria Theresa Camacho. Her two daughters, one of whom was the victim of the homicide, were also members of the household. According to the State's case, defendant was intimate with both girls, and the deceased, age 15, was pregnant by him. The fatal attack followed an innocuous scene involving the deceased and a male friend of defendant. Defendant says he interpreted what he saw to mean that his friend

had designs upon the girl and this prompted defendant, as her parental protector, to demand an explanation from both. Defendant claims he administered but two "hard" slaps to the face of the deceased when she denied that anything covert had passed between her and his friend, but the record is clear that the girl was brutally beaten. The State's case would indicate that defendant sought to rid himself of the problem of the girl's pregnancy, either by attributing it to someone else or by terminating the pregnancy by violence. According to the deceased's mother and sister, defendant beat the victim with his hands and his knees. She died during or close upon the attack. The autopsy disclosed that death was due to hemorrhage of the brain caused by multiple blows about the head. Referring to photographs of the corpse, the medical examiner testified "She was much more battered than that, than the pictures show."

Defendant complains because the trial court permitted Mrs. Camacho to testify to acts of violence by defendant upon her. The testimony was elicited by the prosecutor on redirect. After the defense brought out from Mrs. Camacho that she had not complained to the police with respect to other beatings she said defendant had administered to the deceased, the prosecutor asked her why she had not. Her answer was that she feared to do so because defendant had beaten and cut her. She was permitted to exhibit marks upon her body to support that answer. We have no doubt the testimony was properly admitted in response to the effort to discredit the witness on cross-examination. The defense seeking to make capital of her silence, the State was entitled to her explanation. *State v. Burrell,* 112 *N. J. L.* 330, 336 (*E. & A.* 1934). In fact, the defendant not only assailed Mrs. Camacho's credibility but also sought to attribute the homicide to her, contending she hit her daughter with a pot out of jealousy over the daughter's interest in him. That thesis was advanced with an alternative claim that Mrs. Camacho told others the deceased, in some sort of a fit, struck her head repeatedly on

the bathroom floor. Mrs. Camacho did initially give the police the latter explanation of her daughter's death, but she testified she did so on defendant's order and in fear of him. These circumstances emphasized the propriety of permitting Mrs. Camacho to explain, as part of her total behavior, that she did not seek the aid of the police because of a fear induced by defendant's mistreatment of her.

The difficulty here is that the trial court accepted the redirect testimony upon a different premise, namely, that the prior beatings of Mrs. Camacho were relevant as to the state of mind of defendant when he struck the fatal blows, if, but only if, the jury should find that he did inflict them. The thesis presumably was that the attacks upon Mrs. Camacho and the deceased could be found to be related by a purpose to rule the household by a tyrannical hand.

██ There are situations in which offenses against others, although they may not be shown to prove the defendant committed the act with which he is charged, may be used, if it should be found that he was the actor, to evidence the intent with which he did the act or to negative the existence of an innocent intent. *Rule of Evidence* 55 (adopted pursuant to *N. J. S. A.* 2A:84A–33); 2 *Wigmore, Evidence* (*3d ed.* 1940), § 363, *p.* 275; § 364, *p.* 285; *State v. Boccadoro,* 105 *N. J. L.* 352, *pp.* 356–357 (*E. & A.* 1929); *State v. Deliso,* 75 *N. J. L.* 808, *pp.* 814–817 (*E. & A.* 1908); *State v. Fay,* 127 *N. J. L.* 77, *pp.* 82–83 (*Sup. Ct.* 1941); see *State v. Raymond,* 53 *N. J. L.* 260 (*Sup. Ct.* 1891); *cf. People v. York,* 242 *Cal. App. 2d* 560, 51 *Cal. Rptr.* 661, *pp.* 665–666 (*D. Ct. App.* 1966); *People v. Wells,* 33 *Cal. 2d* 330, 202 *P. 2d* 53 (*Sup. Ct.* 1949); *People v. Harrison,* 46 *Cal. App. 2d* 779, 117 *P. 2d* 19 (*D. Ct. App.* 1941).

Here defendant denied an intent to kill or to do grievous bodily harm. At least inferentially he asserted an intent to do no more than exercise a parental authority over the girl who, he said, lied to him with respect to what transpired between her and his friend. The trial court thought

the alleged beatings of Mrs. Camacho would throw light on the state of mind with which defendant allegedly struck the deceased. Its relevancy may be debatable, but there is an area of discretion reserved for a trial court in these matters and we cannot say the court went beyond it. Perhaps, too, the relations among all the members of the household were so entwined that the events of the fatal day could not be recounted intelligibly without revealing the whole story.

In any event we see no prejudice even if the instruction were assumed to be erroneous. We are not dealing with a situation in which the proof of offenses against others would not otherwise be before the jury. As already noted, the evidence was properly admitted to meet defendant's point that Mrs. Camacho was not credible because she had not complained to the police. The question then is whether it was harmful to tell the jury that the evidence could also be considered upon the issue of intent. Defendant's complaint must be that the jury likely gave that evidence a weight which rationally it was not entitled to receive upon that issue. But the jury was free to disregard that evidence as valueless, and it is likely that the jury did not lean upon it at all. The multiple injuries suffered by the deceased were such as to demonstrate inescapably that the assailant intended at least to do grievous bodily harm, the minimum intent necessary for murder in the second degree. Thus the case had to turn upon whether defendant did or did not administer the beating the State's case attributed to him, rather than upon evidence addressed independently to the state of his mind.

The remaining issues require little more than mere mention. The trial court did not err in admitting photographs of the deceased; they portrayed the injuries and were probative with respect to the severity of the beating and hence with respect to the issue of guilt. We find no support for defendant's contention that sundry incidents operated to deny a fair trial or due process of law. The

claims that the court erred in denying a motion for acquittal and that the verdict is against the weight of the evidence are without merit; the State's proof was believable, and if believed, it amply justified the verdict. Nor can it be said that defendant lacked the capacity to commit the crime; it is doubtful that the evidence raised the issue, but it was left to the jury, which is all that defendant could ask.

The judgment is affirmed.

*For affirmance* — Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, GOLDMANN, SCHETTINO and HANEMAN—7.

*For reversal*—None.