691 A.2d 866

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT, v.
THOMAS G. ZEIDELL, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted January 28, 1997—Decided April 14, 1997.

Villanueva, J.A.D. (retired and temporarily assigned on recall), filed opinion concurring in part and dissenting in part.

Before Judges DREIER, NEWMAN and VILLANUEVA.

*Susan L. Reisner*, Public Defender, attorney for appellant (*Steven M. Gilson*, Designated Counsel, of counsel and on the brief).

*John Kaye*, Monmouth County Prosecutor, attorney for respondent (*Peter E. Warshaw, Jr.*, Assistant Prosecutor, of counsel and on the brief).

The opinion of the Court was delivered by

NEWMAN, J.A.D.

Tried to a jury, defendant, Thomas G. Zeidell, was convicted of two counts of sexual assault, of K.B. and E.B. (counts 1 and 4 respectively), *N.J.S.A.* 2C:14–2b; two counts of endangering the welfare of a child (K.B., count 2, and E.B., count 5), *N.J.S.A.* 2C:24–4a; and fourth-degree lewdness pertaining to K.B. and E.B. (counts 3 and 6 respectively), *N.J.S.A.* 2C:14–4(b)(1). The court sentenced defendant on the sexual assault counts to concurrent ten-year terms with five-year parole disqualifiers in the Adult Diagnostic and Treatment Center in Avenel. The other counts were merged. The usual penalties were imposed. Defendant appeals. We reverse and vacate the convictions on counts 1 and 4 and remand for further proceedings on the remaining counts which are now unmerged.

Defendant committed an act of public masturbation on June 18, 1994 on the boardwalk in Asbury Park near the border of Ocean Grove. Carol S. observed defendant from the beach. She was the adult babysitter in charge of K.B., a boy of ten, his sister, E.B., age eight, and their two female cousins, J.F. and C.F. She pointed defendant out to K.B. and E.B. J.F. and C.F. never observed defendant. Carol sent E.B. to summon the police who were patrolling nearby. Both K.B. and E.B. testified that defendant faced the ocean and looked in the direction of their two cousins who were swimming in the ocean. K.B. and E.B. both said that defendant never spoke to them, did not look in their direction and

never made any gesture toward them. Carol S. could not be located by police and did not testify at trial.[1]

At the end of the State's case, defendant moved for a judgment of acquittal on all counts, but his argument focused on the sexual assault charges. Defendant asserted that there was no evidence that defendant knew that K.B. and E.B. were present or that the two youngsters in the water were the object of defendant's view. The motion was denied.

Next, defendant's counsel argued that defendant would testify at trial if his prior bad acts were not used on cross-examination. Defendant had a past lewdness charge based on exposure of his genitals to a nine-year-old girl in 1991 and a public masturbation charge, at an unspecified time in 1991, in front of a rest home in West Long Branch, which resulted in a guilty plea to lewdness. Before trial and on the State's application, the trial judge denied admissibility of these same prior bad acts as part of the State's direct case. The trial judge ruled that these prior bad acts could be used for rebuttal purposes only.

Defendant did not testify. Had he testified, defendant proffered that he would have said that he pulled his cut-off jeans down to scratch a rash. He had corroborating medical evidence of a rash which was treated when he was first incarcerated after the

---

[1] Our dissenting colleague makes much of the fact that Patrolman Jenkins observed E.B. running towards them in "kind of a frantic type, excited manner," further noting that Jenkins characterized E.B. as "kind of scared" and was unable to understand what E.B. was trying to tell him. We did not mention Patrolman Jenkins' observations in our recitation of the facts for two reasons. First, we did not view them as relevant to the issue before us. Second, we were concerned that any excitement or fright displayed by eight-year-old E.B. could be attributed to being asked by Carol to report defendant's criminal conduct to the police instead of Carol, the adult in charge, reporting it herself. You do not ask a child to assume the adult's responsibility. Ultimately, the adult Carol had to tell the police what happened because E.B. could not make himself understood. We did not view his inability to communicate to the police a consequence of his being "scared" but rather that it was well beyond his range of childhood experience to report criminal activity in general and the nature of this activity in particular to the police.

arrest for these crimes. It was noted that defendant was within 150 feet of a public rest room where he could have scratched the rash in privacy.

During deliberations, the jury's first request was to see the charges on counts 1, 2, 4 and 5 (the sexual assault and endangering the welfare of children charges). The trial judge responded to the jury's request by rereading the initial charges on those counts. The jury's second request was contained in the following question: "What does the prosecutor have to prove beyond a reasonable doubt on count 1 and count 4?" Again, the trial judge reread the instruction pertaining to counts 1 and 4 (sexual assault) and repeated the model reasonable doubt charge. The third jury request was to reread the second request once more. The jury was charged again on sexual assault and reasonable doubt. Guilty verdicts were later returned on all counts.

On appeal, defendant raises the following points:

POINT I

DEFENDANT'S CONVICTIONS MUST BE REVERSED BECAUSE THE TRIAL COURT'S ERRONEOUS DECISION ADMITTING PRIOR BAD ACTS IF HE WERE TO TESTIFY DETERRED DEFENDANT FROM TESTIFYING.

POINT II

DEFENDANT'S MOTION FOR A JUDGMENT OF ACQUITTAL SHOULD HAVE BEEN GRANTED AS TO THE SEXUAL ASSAULT CONVICTIONS.

POINT III

DEFENDANT'S MAXIMUM BASE TERMS MUST BE VACATED AND THIS MATTER MUST BE REMANDED FOR RESENTENCING, BECAUSE THE TRIAL COURT FAILED TO CONSIDER EXISTING MITIGATING FACTORS. (PARTIALLY RAISED BELOW)

■ Defendant argues in Point I that the trial judge erred in allowing the admission of evidence of prior bad acts if defendant testified. Defendant was prepared to testify that he did not masturbate on the boardwalk but, rather, pulled his cut-off jeans down to scratch a rash. Defendant asserts that the testimony of a prior lewdness charge and a public masturbation incident should not have been permitted as rebuttal testimony if defendant testified as proffered. We disagree.

Under *State v. Cofield,* 127 *N.J.* 328, 605 *A.*2d 230 (1992), other-crime evidence can be admitted to prove a relevant issue, provided the four prong test of *Cofield* is satisfied. *See N.J.R.E.* 404(b). In this case, the State met all four requirements found in the *Cofield* test. First, the evidence was relevant to defendant's motive. Defendant's testimony would have consisted of denying public masturbation, essentially stating that the witnesses mistook defendant's act of scratching. Thus, the evidence of defendant's prior acts of lewdness and masturbation would be admissible as relevant to the material issue showing past involvement with children for motive. *See State v. Cusick,* 219 *N.J.Super.* 452, 464–66, 530 *A.*2d 806 (App.Div.), *certif. denied,* 109 *N.J.* 54, 532 *A.*2d 1118 (1987).

Second, the past offenses were similar in kind and sufficiently close in time to the charged offenses to have assisted the jury in understanding defendant's motive or intent. *See State v. G.S.,* 278 *N.J.Super.* 151, 161–62, 650 *A.*2d 819 (App.Div.1994), *certif. denied,* 142 *N.J.* 517, 665 *A.*2d 1110 (1995), *rev'd on other grounds,* 145 *N.J.* 460, 678 *A.*2d 1092 (1996).

Third, the evidence was clear and convincing. Defendant did not even argue otherwise before the trial judge.

Fourth, under *Cofield, supra,* the probative value of the evidence must not be outweighed by its prejudicial impact. 127 *N.J.* at 338, 605 *A.*2d 230 (citation omitted). The prejudice is substantial in a case of this nature. Despite that, defendant's denial of the public masturbation charge and use of the "rash" defense invited a rebuttal response. Indeed, the trial judge acted circumspectly in denying the earlier application by the State to use this same evidence in its direct case. Allowing its use in rebuttal, along with a limiting instruction, would have reduced the potential for prejudice and would not have resulted in a mistaken exercise of discretion. Any prejudice would be further diluted upon the introduction of evidence that defendant was in close proximity to a rest room where he could have scratched the "rash" out of public view. We find no error in the trial judge's ruling.

Defendant argues in Point II that the motion for judgment of acquittal on the second degree sexual assault counts should have been granted. We agree that the second degree sexual assault counts should have been dismissed because the necessary relational component for a conviction on these counts was missing.

*N.J.S.A.* 2C:14–2b provides: "An actor is guilty of sexual assault if he commits an act of sexual contact with a victim who is less than 13 years old and the actor is at least 4 years older than the victim." Sexual assault is a crime of the second degree. *N.J.S.A.* 2C:14–2b. *N.J.S.A.* 2C:14–1d defines "sexual contact" as:

an intentional touching by the victim or actor, either directly or through clothing, of the victim's or actor's intimate parts for the purpose of degrading or humiliating the victim or sexually arousing or sexually gratifying the actor. Sexual contact of the actor with himself *must be in view of the victim whom the actor knows to be present....* (emphasis added)

Here, the alleged victims, K.B. and E.B., had not been touched nor were they asked to touch defendant. In fact, defendant did not look in their direction nor did he make any gesture toward either one of them, and, so far as the record discloses, neither K.B. or E.B. were in close proximity to defendant. Their only connection to defendant's conduct on the boardwalk was as observers from the beach once defendant's actions were pointed out to them by their babysitter. Considered in this undisputed context, we fail to see how the statute was violated.

*State v. Ridgeway,* 256 *N.J.Super.* 202, 606 *A.*2d 873 (App.Div.), *certif. denied,* 130 *N.J.* 18, 611 *A.*2d 656 (1992) is instructive. There, defendant pled guilty to the crime of sexual assault and appealed on the ground that he failed to provide an adequate factual basis. *Id.* at 203, 606 *A.*2d 873. The plea transcript discloses that defendant pulled over in his car and asked an eleven-year-old girl over to the car. *Id.* at 204, 606 *A.*2d 873. At that time, he had his penis in hand and was "playing with it." *Id.* at 204–05, 606 *A.*2d 873. He then said to her "Would you like this?" *Id.* at 205, 606 *A.*2d 873. Ridgeway intended that the victim see exactly what he was doing. *Ibid.* On these facts, our

court found an adequate basis to support the plea to the second degree crime. *Id.* at 206, 606 *A.*2d 873.

The major difference between what occurred in *Ridgeway* and the case at bar was that specific victimization and aggressive assaultive conduct was present in *Ridgeway,* but not here. Those elements simply do not exist in the testimony presented at this trial. It is no wonder that the jury requested instructions not once, not twice, but three times concerning this specific charge because obviously, on these facts, the jury could not distinguish between the instruction on the lewdness charges and the sexual assault charges.

Cannel in his commentary zeroed in on the distinction between sexual assault and lewdness. In commenting on whether the definition of "sexual contact" under *N.J.S.A.* 2C:14–1 included the actor touching himself, Cannel had this to say:

> In the legislative process the source definition was also reworked to clarify it and to combine the touching of the victim by the actor and the touching of the actor by the victim. That gave rise to an ambiguity as to whether touching of the actor by the actor was included. The final sentence was added, therefore, as a clarification and limitation. However, touching which is "criminal sexual contact" must still be distinguished from mere lewdness under 2C:14–4. The distinction may lie in the relation of the actor to the victim. Criminal sexual contact is an essentially assaultive crime. The victim in lewdness, while subject to affront or alarm, is not really made part of the act itself, which is only observed by the victim. Thus, if the victim is forced to touch the actor, sexual contact exists. In a similar way, when the actor touches himself for the purpose of either degrading the victim and or sexually gratifying himself and either forces the victim to observe or is aware of observation by a victim under the critical age there is enough of an actor/victim relationship to amount to criminal sexual contact.
>
> [Cannel, *New Jersey Criminal Code Annotated,* comment 4 on *N.J.S.A.* 2C:14–1 (1996–97).]

We further note that the statutory offense contemplates that there be a specific victim. While our court rejected the argument, in *Ridgeway, supra,* 256 *N.J.Super.* at 205, 606 *A.*2d 873, that the phrase "with a victim" in *N.J.S.A.* 2C:14–2b required actual physical contact between the perpetrator of the crime and the victim, we did not discount in *Ridgeway* that there had to be a victim. Indeed, to do otherwise would be to ignore the statutory language "with a victim" expressly used in *N.J.S.A.* 2C:14–2b, and the fair

meaning of that language is clear as written. Our duty is to apply the language "according to its terms" when the meaning is plain and unambiguous. *State v. Maguire,* 84 *N.J.* 508, 528, 423 *A.*2d 294 (1980) (citations omitted); 2A *Sutherland, Statutory Construction* (1992), § 46.01 at 81–82.

We further reject the notion that the primary distinction between the conduct required for a sexual assault under *N.J.S.A.* 2C:14–2b is more than what is required under *N.J.S.A.* 2C:14–4b(1). In defining the crime of lewdness, *N.J.S.A.* 2C:14–4b(1) reads in relevant part:

> A person commits a crime of the fourth degree if: (1) He exposes his intimate parts for the purpose of arousing or gratifying the sexual desire of the actor or of any other person under circumstances where the actor knows or reasonably expects he is likely to be observed by a child who is less than 13 years of age where the actor is at least 4 years older than the child.

However, the distinction between fourth-degree lewdness and second-degree sexual assault does not lie in the fact that under lewdness, the actor merely need expose himself for the crime of lewdness to take place while a sexual assault covers conduct beyond just the exposure of intimate parts. That is not the distinction to be made. Again, Cannel makes it clear that the distinction lies in the relationship of the actor to the victim.

> The distinction between lewdness, sexual contact and sexual assault lies in the relation of the actor to the victim. Both sexual assault and sexual contact are essentially assaultive crimes: by force or other unfair advantage, the victim is made to participate in a sexual event. The victim of lewdness, while subject to affront or alarm, is not really made a part of the act itself, but is merely an observer. Where a young victim is the observer, however, the more serious crime of sexual assault may be found. This last result follows from the scheme of 2C:14–2 under which the age of the victim functions as the criminal equivalent of force. Therefore, any sexual exposure involving contact of the actor with himself or herself which he or she causes to be observed by a person 13 or under will constitute sexual contact with that victim, and sexual contact with a victim of that age constitutes sexual assault under 2C:14–2b.
>
> [Cannel, *supra*, comment 3 on *N.J.S.A.* 2C:14–4b.]

The significant aspect of this comment is that the actor *causes* or invites the observation by the underaged person. In a word, the actor specifically solicits the observation by the victim. The

observation underlying a sexual assault is unwilling while it may be incidental or casual under lewdness.

The record is clear that there was no entreaty to either K.B. or E.B. by defendant nor were they specifically singled out by him. This was a public act which could reasonably be construed to have been done with an awareness that there were children under the age of thirteen who could observe defendant's conduct if they chose to look in his direction. That conduct satisfies the elements of *N.J.S.A.* 2C:14–4b but does not satisfy the elements of sexual assault under *N.J.S.A.* 2C:14–2b. The convictions under counts 1 and 4 are therefore vacated and judgments of acquittals must be entered.

Defendant argues in Point III that the trial judge should not have imposed maximum ten-year base terms on the second degree convictions. In view of our disposition of the convictions on these specific counts, it is unnecessary to discuss the sentencing issue. Because the other convictions were merged into the convictions on counts 1 and 4, they now become unmerged.

The judgments of conviction on counts 1 and 4 are vacated, and judgments of acquittal must be entered. The matter is remanded for further proceedings on the remaining counts which are un-merged.

VILLANUEVA, J.A.D. (retired and temporarily assigned on recall), concurring and dissenting.

I concur with the majority to affirm the convictions on counts two, three, five and six. However, I part company with my colleagues in their reversal of the sexual assault convictions be-cause I believe that the jury could, and did, reasonably infer that defendant was aware of the two children who were obviously in his view when they observed him and therefore defendant could be found guilty beyond a reasonable doubt of violations of *N.J.S.A.* 2C:14–2b. Thus, I would affirm the convictions on counts one and four.

A more detailed recitation of the facts is necessary before deciding if defendant was entitled to a judgment of acquittal. On June 18, 1994, defendant was first observed by Patrolman Frederick Jenkins of the Neptune Police Department who had been assigned to patrol the Ocean Grove beach area. Shortly after 8:00 p.m., Patrolman Jenkins had exited his vehicle and undertaken routine foot patrol on the boardwalk, near "the northeast most building" in Ocean Grove, which contained a restaurant, an ice cream shop, and various other stores.

Accompanied by Patrolman Phil Seidell, Patrolman Jenkins observed a small group on the beach consisting of Carol S., and four young children, K.B., E.B., J.F, and C.F. Carol was supervising these children. Patrolman Jenkins observed two of the children swimming and the other two playing with Carol in the sand. As he patrolled the boardwalk, Jenkins encountered defendant standing on the boardwalk, next to a bicycle, looking out at the water. Jenkins subsequently left the area and returned to his patrol vehicle.

At the time defendant was masturbating, J.F. and C.F. were playing in the water and apparently did not view any of the events that transpired. E.B. and K.B., ages eight and ten respectively, and Carol were playing on the beach. The defendant was located on the boardwalk some seventy-five feet from E.B., K.B. and Carol. Carol exclaimed "look at that man jerking off over there." Initially, E.B. looked the wrong way after Carol's remark, but subsequently, E.B. looked towards the boardwalk and saw defendant with his pants and underwear down, masturbating. K.B. also made the same observations. E.B., K.B. and Carol all clearly observed defendant masturbating while on the boardwalk. While masturbating, defendant appeared to be watching J.F. and C.F. playing in the water. Both E.B. and K.B. were frightened by defendant's demonstration. Subsequently, Carol dispatched E.B. to get a police officer.

While at his patrol vehicle with Patrolman Seidell, Jenkins observed E.B. running towards them in "kind of a frantic type,

excited manner." This occurred no more than two to three minutes after Jenkins had left the beach area. Jenkins also characterized E.B. as "kind of scared" and Jenkins was unable to understand what E.B. was trying to tell him. Thereafter, Carol and K.B. joined Jenkins and E.B., and Jenkins observed both of them to be excited as well. Carol advised Jenkins that defendant was masturbating on the boardwalk. By the time Jenkins was able to reach the defendant's location the defendant was standing, leaning, looking over the water. At trial Jenkins remarked that from where E.B., K.B. and Carol were located on the beach, they could have clearly seen a person on the boardwalk where defendant was standing, what that person was wearing, and what that person was doing with his hands.

Defendant was subsequently arrested and charged.

In counts one and four defendant was charged with sexual assault under *N.J.S.A.* 2C:14–2b, by committing "an act of sexual contact with a victim who is less than 13 years old and the actor is at least four years older than the victim." The two victims were eight and ten years of age. Defendant was forty years old. Therefore, the issue was solely whether defendant committed sexual contact as defined in *N.J.S.A.* 2C:14–1d. He certainly committed sexual contact by "an intentional touching by [himself] ... of [his own] intimate parts for the purpose of degrading or humiliating the victim or sexually arousing or sexually gratifying [himself]." The pertinent part of the definition which the majority finds lacking is that the act "with himself must be in the view of the victim whom the actor knows to be present."

The ultimate issue is:

whether, viewing the State's evidence in its entirety, be that evidence direct or circumstantial, and giving the State the benefit of all its favorable testimony as well as all of the favorable inferences which reasonably could be drawn therefrom, a reasonable jury could find guilt of the charge beyond a reasonable doubt.

[*State v. Reyes,* 50 *N.J.* 454, 459, 236 *A.*2d 385 (1967).]

The majority concludes that the "defendant did not look in [E.B.'s and K.B.'s] direction nor did he make any gesture toward either one of them, and, so far as the record discloses, neither

K.B. or E.B. were in close proximity to defendant." *See* majority opinion, at 619, 691 *A.*2d at 869. I submit that defendant's location on the edge of a boardwalk overlooking an almost deserted beach, seventy-five feet away from the victims and in clear view of the victims equates to close proximity. That at least would be a question for the jury to determine.

Furthermore, the majority's reliance upon *State v. Ridgeway,* 256 *N.J.Super.* 202, 606 *A.*2d 873 (App.Div.), *certif. denied,* 130 *N.J.* 18, 611 *A.*2d 656 (1992), is misplaced. There is no requirement in the aforesaid statutes that the actor has to make any gesture towards the victim. There does not have to be "specific victimization and aggressive assaultive conduct," as the majority holds. *See* majority opinion, at 620, 691 *A.*2d at 869. All that is necessary is that the sexual act be "in the view of the victim whom the actor knows to be present." *N.J.S.A.* 2C:14–1d.

Despite defendant's attorney's cross-examination and summation to the jury arguing that E.B. and K.B. were not in a position to view the defendant, the jury, and ultimately the trial judge, rejected this argument.

Police Officer Jenkins observed defendant on the boardwalk next to a bicycle. There was no proof how long defendant had been there, nor need there be. The jury could reasonably conclude that it had been much more than a few seconds. They could also reasonably conclude that the defendant did not approach on his bicycle and park it on the boardwalk without observing what or who was in the immediate vicinity. Rather, the jury could reasonably conclude that defendant stopped at a particular spot and, for a period of several minutes or more, he was aware that the minors, E.B., a girl, and K.B., a boy, and their female supervisor of unknown age,[1] were on the beach only seventy-five feet away. Certainly, it is not necessary for the State to obtain an admission by the defendant that he was aware of the victims' presence or

---

[1] At the time of trial, the supervisor could not be located and therefore did not testify.

their observation of him. Defendant's awareness may be inferred by the circumstances.

Furthermore, the Legislature has made it a more serious offense when a victim of an otherwise lesser sexual offense is below the critical age. One authority has stated:

> The distinction between lewdness, sexual contact and sexual assault lies in the relation of the actor to the victim. Both sexual assault and sexual contact are essentially assaultive crimes: by force or other unfair advantage, the victim is made to participate in a sexual event. The victim of lewdness, while subject to affront or alarm, is not really made a part of the act itself but is merely an observer. Where a young victim is the observer, however, the more serious crime of sexual assault may be found. This last result follows from the scheme of 2C:14–2 under which the age of the victim functions as the criminal equivalent of force. Therefore, any sexual exposure involving contact of the actor with himself or herself which he or she causes to be observed by a person 13 or under will constitute sexual contact with that victim, and sexual contact with a victim of that age constitutes sexual assault under 2C:14–2b.
>
> [Cannel, *New Jersey Criminal Code Annotated,* comment 3 on *N.J.S.A.* 2C:14–4 (1996–97).]

Defendant's argument that E.B. and K.B. inadvertently observed his conduct is without legal significance, as is the argument that they were not his target. The fact that the children, while on the beach, turned their heads to observe the defendant does not affect defendant's intent. Defendant's guilt does not turn on the fortuitous event of when and why the minors turned their heads to observe him. It would be unreasonable to assume that when defendant arrived at the place on the boardwalk where he masturbated, he did not even look at the beach in the immediate vicinity for at least five or more minutes.

The real question under *N.J.S.A.* 2C:14–1d is whether defendant knew E.B. and K.B. were present. The evidence indicated that he must have known and the jury could reasonably infer that he did know. The jury knew that E.B., K.B. and their supervisor were the only people on the beach at the time of the incident. Therefore, the record is not clear, as the majority holds, "that there was no entreaty to either K.B. or E.B. by defendant nor were they specifically singled out by him." *See* majority opinion, at 622, 691 *A.*2d at 870. The jury could have so concluded but

they did not. We must keep in mind that when the motion for judgment of acquittal was made, the State was entitled to all the favorable inferences that could reasonably be drawn.

This is likewise true regarding the majority's conclusion that there were no "victims" and that E.B. was really not scared because of defendant's actions, but rather, his behavior was attributable to Carol's request to report defendant's criminal conduct to the police. *See* majority opinion, at 616 n. 1, 691 *A.2d* at 867 n. 1. Notably, E.B. testified that when she observed the defendant, E.B. "was scared" because she "thought [the defendant] was crazy." This was *before* the police were summoned. The reason that E.B. and K.B. were scared and traumatized was clearly for the jury to determine, which was not difficult.

In any event, giving the State the benefit of all favorable inferences, a reasonable jury could, and did, conclude that defendant did look and knew that very young children were present and looked at them. Accordingly, the trial court properly denied the defendant's motion for a judgment of acquittal as to the sexual assault charges.

Lastly, the sentence of ten years in prison with a five-year parole ineligibility to be served at the Adult Diagnostic and Treatment Center in Avenel does not "shock the judicial conscience." *State v. Roth*, 95 *N.J.* 334, 364–65, 471 *A.2d* 370 (1984). The trial judge specifically considered the Avenel report which concluded that defendant suffered from a compulsive and repetitive pattern of exhibitionist behavior, as well as defendant's "very extensive record of sexual offenses."

Defendant had three indecent exposure complaints sustained as a juvenile, starting at age fourteen. Since 1975, he has had eight convictions for lewdness and a sexual assault conviction for which he was sentenced to an indeterminate term not to exceed ten years on April 10, 1981. Defendant has established a long history of exhibitionist behavior which has continued despite two terms of specialized sex offender treatment.

Therefore, I would affirm the sexual assault convictions.