725 A.2d 675

STATE OF NEW JERSEY, PLAINTIFF–APPELLANT, v. THOMAS
WILLIAM COVELL, DEFENDANT–RESPONDENT.

Argued February 17, 1999—Decided March 24, 1999.

556

*Julie Davidson,* Assistant Prosecutor, argued the cause for appellant (*Glenn Berman,* Middlesex County Prosecutor, attorney).

*Jodi L. Ferguson,* Assistant Deputy Public Defender, argued the cause for respondent (*Ivelisse Torres,* Public Defender, attorney).

The opinion of the Court was delivered by

GARIBALDI, J.

Defendant, Thomas Covell, was convicted of child luring in violation of *N.J.S.A.* 2C:13–6.  That statute states:

A person commits a crime of the third degree if he attempts to lure or entice a child into a motor vehicle, structure or isolated area with a purpose to commit a criminal offense with or against the child.

At issue is whether defendant's statement to police officers about an alleged prior act of lewdness that occurred sixteen months before the offense for which he was convicted was properly admitted in evidence. To resolve that question, we consider the admissibility of defendant's statement as evidence of "other crimes, wrongs or acts" under *N.J.R.E.* 404(b), and as a "statement by party-opponent" under *N.J.R.E.* 803(b). We also must determine whether that statement's probative value is outweighed by its prejudicial effect, pursuant to *N.J.R.E.* 403(a).

## I.

On October 8, 1994, A.P., an eight-year-old girl, was riding her bicycle alone on the sidewalk outside of her home in Perth Amboy, New Jersey. As she rode by a store several houses down from her home, a man pulled up in a blue car and beckoned her by motioning with his right index finger. A.P. shook her head "no" and continued to ride her bicycle. When A.P. rode past the man a second time, he made a "waving" gesture with his right hand. A.P. again shook her head "no" and continued to ride her bicycle. When A.P. rode past the man a third time, he motioned to her again and told her to "get in the car before somebody sees you." A.P. refused to get into the car and continued riding her bicycle until her mother called her to come inside the house.

A.P. identified Covell in court and testified that the man in the car was caucasian with balding blond hair, blue eyes, and looked like Hulk Hogan. Her initial description to the police included tattoos on the right hand and a beard. During her formal police statement, however, the beard became a mustache and the tattoos were on his arms. A.P. also testified that she had seen the man approximately two years earlier when she had been sitting on her bicycle and "[h]e did the same thing." She did not know the man and did not have any reason to speak to him. She did not make an in-court identification of defendant during her direct examina-

tion. However, after cross-examination and a break in the trial, the prosecutor requested that a hearing be held outside the presence of the jury. At that time A.P. said that she did recognize defendant. When recalled on redirect examination, A.P. made an in-court identification of defendant as the man in the blue car.

Ramon Taveras, a cousin of A.P.'s mother who lives next to the store, testified that he noticed a blue car with one occupant blocking the entrance to his driveway. Although he did not hear what was said he noticed the occupant, a caucasian man with blond hair and a bald spot, calling to A.P. and beckoning her with his right index finger. When Taveras approached the blue car to see what the man wanted with A.P., the car sped off. Taveras followed the car and wrote down the license plate number. He then returned home, spoke with A.P.'s mother, and called the police. In court, Taveras was not asked to identify defendant. The license plate number led the police to Thomas Covell, who was arrested for child luring, contrary to *N.J.S.A.* 2C:13–6.

The arrest report described defendant as a forty-four-year-old caucasian male, weighing two hundred and thirty pounds, and having balding blond hair, a mustache, blue eyes, and several tattoos on his arms. During the ride to the Middlesex County Correction Center, defendant told an officer that "now that I have time to think about it, I did see a girl on a bike in the area and I let her go across the street, waving her on."

To secure a conviction under *N.J.S.A.* 2C:13–6, for the State to establish that defendant was the man in the car is not sufficient. The State also must prove that Covell attempted to lure A.P. for the purpose of committing a criminal offense with or against her. To establish that point, the State sought to admit evidence related to an alleged prior incident of lewdness. Defendant was never charged and it was never established that defendant in fact committed that offense. The State presented evidence that on June 25, 1993, defendant was questioned at the Perth Amboy Police Department regarding an incident that allegedly took place

on June 24, 1993, in a Shop Rite store in Perth Amboy, involving defendant and a young girl.

During the questioning on June 25, 1993, defendant told the officers that he had approached a young girl in the store and asked "if she knew what kind of Spanish fruit ... was hanging in the store." Defendant then lowered two plastic plums that he had in his hand to the level of his groin area and told the girl that "she should eat fruit to grow big like me." Defendant then told the officers that he "felt himself starting to go off" and was about to leave when a man approached him. The man observed that defendant had an erection at the time, and defendant ran away. Defendant told the officers that "if it's a crime to talk to girls, then I'm guilty." He also said during that police interview:

I have a problem with girls. I never was interested in older women just young girls and teenage girls. I never had a childhood and I'm trying to relive it.... I have this thing with young girls that I can't help.

After a pre-trial hearing, the trial court determined the above portion of defendant's police statement to be admissible. In addition to the statement itself, the investigating officer told the jury that defendant gave the statement while being questioned at police headquarters and that *Miranda* [1] warnings had been administered. He also stated, however, that no charges were brought against defendant because nothing defendant said had inculpated him in a crime. In addition, the trial court told the jury that the evidence was not to be used to show any predisposition on the part of defendant to commit an offense.

In her closing arguments, however, the prosecutor hinted that Covell was brought in for questioning in connection with a prior sexual offense. She stated:

[A.P.] testified that she lives across the street from a school. And if you are going to look for young girls—

---

[1] *Miranda v. Arizona,* 384 *U.S.* 436, 86 *S.Ct.* 1602, 16 *L. Ed.*2d 694 (1966).

. . .

> If you are going to look for young girls, the most likely place is across the street from the school. Even though it's a Saturday, ladies and gentlemen, kids play in the school yard, kids are around the school.
>
> The defendant is a block from an elementary school. He is in a neighborhood—although he is in a neighborhood that is not his own, he is not going to stay in his own neighborhood, people know him there. He is going to a different neighborhood of Fayette Street, a block away from a school. That brings us to what Thomas Covell told Detective Bielinski in June, on June 25th of 199[3]—no, he wasn't charged with a crime at that point, but in the interview with Detective Bielinski he says, I have a problem with girls. I was never interested in older women, just young girls and teenage girls. I never had a childhood and I am trying to live it. I have this thing with young girls that I can't help.

Before the jury began to deliberate, the court provided limiting instructions with regard to defendant's June 25th statement. During its deliberation the jury asked for a readback of Detective Bielinski's testimony that explained the circumstances under which defendant gave that statement, and also asked for an explanation about why defendant had been brought in for questioning in 1993. With regard to the latter request, the court advised the jury that that question was not "germane."

The jury returned a verdict convicting defendant of third-degree child luring. A custodial term of five years with a two and one-half year parole disqualifier was imposed, along with fines and penalties. Defendant appealed his conviction, asserting that the trial court made the following errors: (1) it erred in admitting defendant's statement, which was made sixteen months before this offense and addressed an unrelated matter; (2) its instruction concerning the use of the other-bad-acts evidence was inadequate; (3) it improperly denied defendant's motion for a judgment of acquittal; and, finally (4) it imposed a sentence not warranted by an appropriate balancing of aggravating and mitigating factors.

In an unpublished opinion, the Appellate Division, citing the four-part test set forth in *State v. Nance*, 148 *N.J.* 376, 387, 689 *A*.2d 1351 (1997), determined that defendant's statement was inadmissible as other-conduct evidence to prove intent under *N.J.R.E.* 404(b). Specifically, the court found that the evidence

lacked relevance, was too prejudicial pursuant to *N.J.R.E.* 403, and did not admit to conduct. The panel also observed that the statement did not fit under *N.J.R.E.* 803(c)(25) as a statement against interest because it would be inadmissible under *N.J.R.E.* 403. Further, the court explained that because the admission of that statement was necessary for the State to convict defendant, it was not harmless.

Because the Appellate Division reversed defendant's conviction on the erroneous admission of his statement, it did not address his other contentions, and remanded the case for further proceedings consistent with its opinion.

We granted the State's petition for certification, 156 *N.J.* 409, 719 *A.*2d 641 (1998), and now reverse.

## II.

### A. *N.J.R.E. 404(b)*

At trial, the State's primary argument was that defendant's statement should have been admitted under *N.J.R.E.* 404(b). That Rule states:

Evidence of other crimes, wrongs, or acts is not admissible to prove the disposition of a person in order to show that he acted in conformity therewith. Such evidence may be admitted for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident when such matters are relevant to a material issue in dispute.

Evidence of other crimes, wrongs or acts may not be introduced into evidence to prove a defendant's criminal disposition as a basis for establishing guilt of the crime charged. *State v. Stevens,* 115 *N.J.* 289, 293, 558 *A.*2d 833 (1989). The evidence presented through this rule should not be used to "suggest that because the defendant is a person of criminal character, it is more probable that he committed the crime for which he is on trial." *State v. Weeks,* 107 *N.J.* 396, 406, 526 *A.*2d 1077 (1987). However, the Rule expressly permits such evidence to be admitted to prove other facts in issue, such as "motive, intent, plan, knowledge,

identity, or absence of mistake or accident." *State v. Stevens, supra,* 115 *N.J.* at 293, 558 *A.*2d 833.

In order for other-crime and other-conduct evidence to be admissible, the evidence must meet the four-part test set forth in *State v. Cofield,* 127 *N.J.* 328, 338, 605 *A.*2d 230 (1992). That test is as follows: (1) It must be relevant to a material issue; (2) It must be similar in kind and reasonably close in time to the offense charged; (3) The evidence of the other crime must be clear and convincing; and (4) The probative value of the evidence must not be outweighed by its apparent prejudice.

The admissibility of other-crime evidence is left to the discretion of the trial court: "The trial court, because of its intimate knowledge of the case, is in the best position to engage in this balancing process. Its decisions are entitled to deference and are to be reviewed under an abuse of discretion standard." *State v. Ramseur,* 106 *N.J.* 123, 266, 524 *A.*2d 188 (1987); *see also State v. DiFrisco,* 137 *N.J.* 434, 496, 645 *A.*2d 734 (1994) (noting that "[w]e accord trial judges broad discretion in applying the balancing test"), *cert. denied,* 516 *U.S.* 1129, 116 *S.Ct.* 949, 133 *L. Ed.*2d 873 (1996). Only where there is a "clear error of judgment" should the "trial court's conclusion with respect to that balancing test" be disturbed. *State v. Marrero,* 148 *N.J.* 469, 483, 691 *A.*2d 293 (1997) (citing *DiFrisco, supra,* 137 *N.J.* at 496–97, 645 *A.*2d 734).

Defendant argues that the statement he made to the police on June 25, 1993 fails all four parts of the *Cofield* test. The State, on the other hand, contends that the Appellate Division erred by failing to admit the statement under *N.J.R.E.* 404(b). In addition, the State argues that the statement was not too prejudicial to be admitted.

### 1. *Relevance*

The first part of the *Cofield* test states that the evidence of the prior bad act, crime or wrong must be relevant to a material

issue that is genuinely disputed. Evidence is relevant if it tends "to prove or disprove any fact of consequence to the determination of the action." *N.J.R.E.* 401. In determining whether evidence is relevant, the inquiry should focus on the "logical connection between the proffered evidence and a fact in issue." *State v. Hutchins,* 241 *N.J.Super.* 353, 358, 575 *A.*2d 35 (App.Div.1990). If the evidence offered makes the inference to be drawn more logical, then the evidence should be admitted unless otherwise excludable by a rule of law. Biunno, *Current N.J. Rules of Evidence,* comment 1 on *N.J.R.E.* 401 (1998–1999).

In criminal prosecutions, New Jersey courts generally admit a wider range of evidence when the motive or intent of the accused is material. *State v. Rogers,* 19 *N.J.* 218, 228, 116 *A.*2d 37 (1955). That includes evidentiary circumstances that "tend to shed light" on a defendant's motive and intent or which "tend fairly to explain his actions," even though they may have occurred before the commission of the offense. *Ibid.*

Other-crime evidence and other-conduct evidence have been found probative of intent and motive. In *State v. Erazo,* 126 *N.J.* 112, 594 *A.*2d 232 (1991), the State introduced evidence showing that the defendant had been convicted of murder to support its argument that the defendant had killed the victim to prevent her from causing a revocation of his parole. *Id.* at 130–31, 594 *A.*2d 232. The Court held that the other-crime evidence was properly admitted because it was "necessary to prove the State's theory of defendant's motive." *Id.* at 131, 594 *A.*2d 232. In *State v. Stevens, supra,* 115 *N.J.* at 306–07, 558 *A.*2d 833, the Court found evidence of the defendant's prior unauthorized searches of two women to be highly probative of his purpose in conducting the searches, which was to "gratify his sexual desires and [that he] did so knowing that such conduct was unauthorized." Such evidence was deemed relevant and admissible. *Ibid.*

In *State v. Mulero,* 51 *N.J.* 224, 238 *A.*2d 682 (1968), and *State v. Cusick,* 219 *N.J.Super.* 452, 530 *A.*2d 806 (App.Div.), *certif. denied,* 109 *N.J.* 54, 532 *A.*2d 1118 (1987), other-crime evidence to prove

intent was admissible. In *Mulero*, the defendant was accused of beating to death the daughter of his paramour. *Mulero, supra,* 51 *N.J.* at 226–27, 238 *A.*2d 682. He admitted that he had struck the victim, but denied having killed her. *Id.* at 227–28, 238 *A.*2d 682. The paramour testified that the defendant had beaten her on previous occasions. *Ibid.* The Court held that admitting the testimony was proper because it was probative of the defendant's intent with regard to his striking the victim.

The Appellate Division reached the same conclusion in *State v. Cusick,* 219 *N.J.Super.* 452, 530 *A.*2d 806 (App.Div.), *certif. denied* 109 *N.J.* 54, 532 *A.*2d 1118 (1987), a case in which the defendant was accused of sexually assaulting a child. Over the defendant's objection, testimony by the victim and another child concerning prior acts of sexual assault for which the defendant had been convicted in a separate proceeding were permitted by the trial court. *Id.* at 464, 530 *A.*2d 806. The Appellate Division affirmed, finding that the evidence was admissible to show intent and lack of mistake. On the intent issue, the court noted:

> Extremely probative of whether defendant's acts were done for purposes of sexual arousement or gratification was the evidence that defendant had previously pleaded guilty to having sexually assaulted young girls. This fact supported the inference that defendant enjoyed or was stimulated by sexual acts with young girls and was therefore relevant to whether or not defendant was guilty of sexual contact.
>
> [*Id.* at 465–66, 530 *A.*2d 806.]

In interpreting defendant's statement, it is logical to conclude that defendant meant he was sexually attracted to young girls. That is especially true because he specifically stated that he was not interested in older women, just young girls and teenage girls. A logical interpretation of that statement is that defendant is insinuating that society would expect him to be attracted to women, but instead, he is interested only in young girls and teenagers. Such a statement implies that defendant's "interest" in A.P. was a physical attraction for his sexual gratification.

Being sexually attracted to young girls does not, as defendant properly asserts, prove that he intended to commit a crime, much less a crime of a sexual nature against A.P. However, it does make

it more likely that defendant's purpose in beckoning to A.P. was to commit a sexual crime with or against her. Because defendant's purpose in luring A.P. is an essential element to convict defendant, part one of the *Cofield* test is satisfied.

### 2. *Similar in Kind and Reasonably Close*

Part two of the *Cofield* test, providing that other-conduct evidence must be similar in kind and reasonably close in time to the offense charged, also is satisfied. First, the incidents are similar. They both involve young girls. They both occurred during the day in a public place when the girls were alone. When an adult approached, defendant fled. In each case, it can be inferred that defendant sought to sexually gratify himself with or in the presence of a young girl. In the prior incident, for example, defendant was observed having an erection while talking to a young girl. In the present case, it was the State's belief that defendant attempted to lure A.P. into the car so he could engage in an act to sexually gratify himself.

To satisfy the temporal requirement, cases using *Evid. R.* 55, replaced by *N.J.R.E.* 404(b), have admitted evidence involving longer time periods between the prior other-crime evidence and the crime charged than are present in this case. In *State v. Stevens, supra,* 115 *N.J.* at 295–96, 558 *A.*2d 833, we held that prior incidents occurring approximately two-and-one-half years prior to the event for which the defendant was indicted were admissible. *See also State v. Ramseur, supra,* 106 *N.J.* at 266, 524 *A.*2d 188 (holding that evidence of arguments between defendant and woman one-and one-half-years prior to woman's stabbing was admissible and not too remote to prove motive and intent).

### 3. *Clear and Convincing Evidence of Conduct*

Part three of the *Cofield* test provides that the other-crime or conduct evidence must be clear and convincing. Defendant asserts that the statement indicates only that defendant has some type of problem with young girls. The statement does not set

forth a prior incident and is not evidence of conduct. A similar argument was advanced by defendant concerning why defendant's statement was not relevant. We find all the reasons that make defendant's statement relevant to indicate his intent and purpose in luring A.P. applicable here. *Supra*, at 536–67, 725 *A*.2d 675.

Further, an analogous argument was asserted in *State v. Crumb*, 307 *N.J.Super.* 204, 704 *A*.2d 952 (App.Div.1997), *certif. denied*, 153 *N.J.* 215, 708 *A*.2d 66 (1998). The Appellate Division in *Crumb* allowed defendant's letters, verses, and drawings espousing his hatred toward African–Americans into evidence pursuant to *N.J.R.E.* 404(b) to prove defendant's motive in murdering an African–American man. The court in *Crumb, supra*, stated that "[a]lthough defendant's writings are constitutionally protected free expressions of his racial beliefs and are not themselves unlawful, they nonetheless may be interpreted by a jury to constitute other wrongs or acts ... which may not necessarily be unlawful." 307 *N.J.Super.* at 231, 704 *A*.2d 952.

Although being sexually attracted to young girls in and of itself is not a crime, a jury may interpret defendant's expression of those feelings to be a wrong or bad act in relation to his intent just as the jury could have found the defendant's writing in *Crumb* to be a bad act. We find that the statement satisfies part three of the *Cofield* test.

### B. *N.J.R.E. 403 Analysis*

To satisfy part four of the *Cofield* test, we apply the balancing test of *N.J.R.E.* 403. That rule excludes evidence if "its probative value is substantially outweighed by the risk of... undue prejudice." In particular, evidence claimed to be unduly prejudicial can be excluded only where its probative value "is so significantly outweighed by [its] inherently inflammatory potential as to have a probable capacity to divert the minds of the jurors from a reasonable and fair evaluation" of the basic issues of the case. *State v. Thompson*, 59 *N.J.* 396, 421, 283 *A*.2d 513 (1971). Ultimately, however, the admissibility of such evidence falls large-

ly within a judge's discretion, and "[h]is discretion is a broad one." *State v. Sands,* 76 *N.J.* 127, 144, 386 *A.*2d 378 (1978). Only where there has been "a clear error of judgment" should a *N.J.R.E.* 403 determination be overturned. *See State v. Koedatich,* 112 *N.J.* 225, 313, 548 *A.*2d 939 (1988), *cert. denied,* 488 *U.S.* 1017, 109 *S.Ct.* 813, 102 *L. Ed.*2d 803 (1989).

The "more attenuated and the less probative the evidence, the more appropriate it is for a judge to exclude it" under *N.J.R.E.* 403. *State v. Medina,* 201 *N.J.Super.* 565, 580, 493 *A.*2d 623 (App.Div.), *certif. denied,* 102 *N.J.* 298, 508 *A.*2d 185 (1985). In evaluating the probative value of certain evidence, the "remoteness" of the evidence is often discussed. *Rogers, supra,* 19 *N.J.* at 229, 116 *A.*2d 37. "The question of remoteness is to be decided by the trial court as a matter of discretion, and the determination so made is not reviewable unless it appears there was a palpable abuse of discretion." *Ibid.* Remoteness, however, "cannot ordinarily be determined by the passage of time alone." *Sands, supra,* 76 *N.J.* at 144, 386 *A.*2d 378. The nature of the evidence must be considered as well. *See ibid.* (stating that when evaluating remoteness the nature of convictions will be significant). In *State v. Bass,* 221 *N.J.Super.* 466, 483–84, 535 *A.*2d 1 (App.Div. 1987), the court held that statements made by the defendant more than two years before he allegedly murdered his son, which reflected a cavalier attitude toward care for the boy, were not so remote as to require exclusion.

In addition to remoteness, a court must consider the availability of other evidence that can be used to prove the same point. Biunno, *supra,* comment 3 on *N.J.R.E.* 403. Probative value is enhanced by the absence of any other evidence that can prove the same point. See *State v. Stevens, supra,* 115 *N.J.* at 303, 558 *A.*2d 833. Conversely, relevant evidence losses some of its prooative value if there is other non-inflammatory evidence available to prove that point. See *State v. Johnson,* 120 *N.J.* 263, 298, 576 *A.*2d 834 (1990); *State v. Davis,* 116 *N.J.* 341, 366, 561 *A.*2d 1082 (1989).

Some types of evidence require a very strong showing of prejudice to justify exclusion. One example is evidence of motive or intent. The Court in *State v. Carter*, 91 *N.J.* 86, 106, 449 *A.*2d 1280 (1982) (quoting 1 Wharton, *Criminal Evidence*, ¶ 170 at 316 (13th ed.1972)), stated that "evidence as to motive of a criminal defendant is admissible even though it may be prejudicial in the sense that it will arouse or inflame the jury against the defendant." *See also Rogers, supra,* 19 *N.J.* at 228, 116 *A.*2d 37 ("[W]henever the motive or intent of the accused is important and material, a somewhat wider range of evidence is permitted in showing such motive or intent than is allowed in the support of other issues."). For example, evidence of a defendant's former membership in the Black Panther Party and the defendant's express hatred of police was held to be admissible on the issue of motive at his trial on a charge of shooting an officer. *State v. Cherry,* 289 *N.J.Super.* 503, 527–28, 674 *A.*2d 589 (App.Div.1995).

In this case, the trial court did recognize that the statement was prejudicial towards defendant, but after weighing its probative value and potential prejudice concluded that the statement's prejudicial effect did not outweigh its probative value. In reaching that conclusion, the trial court considered the following factors. First, defendant's statement is the State's only evidence to prove defendant's intent or motive. That fact enhances the probative value of the evidence. Second, and closely aligned to that first reason, the statement was made after defendant had been questioned about an incident with a young girl. Therefore, the statement is probative of his intentions when young girls are concerned, and specifically probative of his intention in beckoning A.P. and telling her to get into his car before anyone saw her. Third, the statement is not too remote. Courts have allowed statements into evidence that were made beyond the sixteen-month period that passed in this case.

Moreover, although the court recognized that the statement was clearly prejudicial, it found that the statement was unlikely to be so highly inflammatory that it would distract the jurors from

performing their jobs properly. As previously observed, the court's tendency is to be more open to the admission of motive or intent evidence. This weighs heavily in favor of the statement's admissibility.

New Jersey courts have admitted sexual conduct evidence that appears more inflammatory than defendant's statement. *See State v. Zeidell,* 299 *N.J.Super.* 613, 618, 691 *A.*2d 866 (App.Div.), *certif. denied,* 151 *N.J.* 470, 700 *A.*2d 882 (1997) ("The evidence of defendant's prior acts of lewdness and masturbation would be admissible as relevant to the material issue showing past involvement with children for motive."); *State v. Cusick, supra,* 219 *N.J.Super.* at 464, 530 *A.*2d 806 (allowing victim and another eight-year-old child to testify regarding defendant's prior acts of sexual assault to prove defendant's motive and absence of mistake in sexually molesting the victim).

Defendant's statement is not as inflammatory as was the evidence of crime in *Cusick* and *Zeidell.* Furthermore, the nature of the crime, luring, makes it difficult to infer a criminal intent. Defendant's statement was material to prove motive and intent that were genuinely in dispute. There was no other evidence available to establish motive and intent, and the statement was not too remote. Consequently, the trial court did not abuse its discretion in holding that defendant's statement was admissible under *N.J.R.E.* 404(b), and that the statement was not too prejudicial to be admitted under 403(b).

### III.

*N.J.R.E. 803(b)(1)*

At trial the State asserted that the statement should be admitted pursuant to *N.J.R.E.* 404(b). Although not abandoning that claim before this Court, the State now asserts that the statement also could have been admitted under *N.J.R.E.* 803(b)(1). Defendant's brief never addresses whether defendant's statement is admissible under *N.J.R.E.* 803(b).

*N.J.R.E.* 803(b)(1) provides that a statement can be admitted into evidence if the "statement [is] offered against a party which is the party's own statement, made either in an individual or in a representative capacity." A statement admitted under *N.J.R.E.* 803(b)(1) does not have to be contrary to the party's interest when made. *Cf. N.J.R.E.* 803(c)(25) (declaring the admissibility of declarations against interest).

■ Generally, as long as there are no *Bruton*,[2] *Miranda,* privilege or voluntariness problems, and subject to *N.J.R.E.* 104(c), the State may introduce at a criminal trial any relevant statement made by a defendant. Biunno, *supra,* comment 1 on *N.J.R.E.* 803(b)(1) (1998). Here, there are no such problems. In addition, it is clear that the statement was made by defendant. Therefore, in determining whether the statement should be admitted under *N.J.R.E.* 803(b)(1), we must determine only whether the statement was relevant. For the reasons previously set forth, defendant's statement was relevant. *Supra,* at 566, 725 *A.*2d 675.

The more interesting issue is whether a statement admitted under *N.J.R.E.* 803(b)(1) is subject to *N.J.R.E.* 403. Without citing any authority, the State asserts that it is not. Defendant's brief does not address *N.J.R.E.* 803(b). Few cases or commentators specifically address the issue of whether a defendant's statement admitted under *N.J.R.E.* 803(b) is subject to the balancing test of 403. We believe the reason for such sparse authority on that issue is because, as in this case, the parties usually argue that the evidence is admissible under *N.J.R.E.* 404(b), rather than *N.J.R.E.* 803(b)(1). Nonetheless, 2 *McCormick, Evidence,* ¶ 254, at 142 (J. Strong 4th ed.1992), states, "Moreover, while generally received in evidence because of their substantial probative value in most situations, admissions may be excluded if their probative value is substantially outweighed by the prejudicial impact."

---

[2] *Bruton v. United States,* 391 *U.S.* 123, 88 *S.Ct.* 1620, 20 *L. Ed.*2d 476 (1968).

Several comments in Biunno, *Current N.J. Rules of Evidence* suggest that *N.J.R.E.* 803(b) statements are subject to *N.J.R.E.* 403. Biunno, *supra,* comment 1 on *N.J.R.E.* 803(b)(1), states, "[a]pplication of *N.J.R.E.* 403 could keep out of evidence an otherwise admissible statement of a party," citing *State v. Bass,* 221 *N.J.Super.* 466, 483–84, 535 *A.*2d 1 (App.Div.1987), and *State v. Ellis,* 280 *N.J.Super.* 533, 548, 656 *A.*2d 25 (App.Div.1995). Although both cases applied the *N.J.R.E.* 403(b) balancing test to statements admitted under *N.J.R.E.* 803(b), neither case offered any explanation about why *N.J.R.E.* 403(b) applied.

Biunno, *supra,* comment 8 on *N.J.R.E.* 403, states that:

*N.J.R.E.* 404(a)(2) provides that a trial judge may not use *N.J.R.E.* 403 to exclude evidence of good character offered by a defendant in a criminal case. See comment 4 to *N.J.R.E.* 404. That is the only other Rule which specifically prohibits exclusion of proffered evidence under *N.J.R.E.* 403.

The last sentence of 803(b) states, "In a criminal proceeding, the admissibility of a defendant's statement which is offered against the defendant is subject to Rule 104(c)." *N.J.R.E.* 104(c) provides, in part: "Where by virtue of any rule of law a judge is required in a criminal action to make a preliminary determination as to the admissibility of a statement by the defendant, the judge shall hear and determine the question of its admissibility out of the presence of the jury."

In this case, the trial court did hold a preliminary hearing pursuant to *N.J.R.E.* 403, and did balance the probative and prejudicial effects of defendant's statement. As required by *N.J.R.E.* 104(c), the trial court also specifically instructed the jury with respect to defendant's statements that it was their "function to determine whether or not they were actually made by him and if made whether the statements or any portions are credible." The court further stated, "If after a consideration of these factors you determine the statement was not made or is not credible, you must disregard it entirely."

We perceive no policy reason why *N.J.R.E.* 403 should not be applied to *N.J.R.E.* 803(b). In most cases, we suspect that the

probative value of a defendant's statement would outweigh its prejudicial effect and be admitted. Undoubtedly, however, there will be some cases where the prejudicial impact of a defendant's statement will outweigh its probative value. Such a case may arise where there is available less inflammatory evidence. In that context, a defendant's statement may not be admissible. Accordingly, statements admitted under *N.J.R.E.* 803(b)(1) are subject to the *N.J.R.E.* 403 balancing test. Applying the 403 balancing test to defendant's statement, we find that its probative value outweighed its prejudicial effect on defendant. *See, supra,* at 570, 725 *A.*2d 675.

## IV.

Although the Appellate Division did not reach the issue of the sufficiency of the limiting jury instruction because it reversed on other grounds, we have reviewed the instruction and conclude that it was sufficient.

When a trial court admits evidence of other conduct to show the defendant's motive, intent, or absence of an accident, "the court must instruct the jury on the limited use of the evidence." *Cofield, supra,* 127 *N.J.* at 340–41, 605 *A.*2d 230. To satisfy that standard, a court's instruction must " 'be formulated carefully to explain precisely the permitted and prohibited purposes of the evidence.' " *Id.* at 341, 605 *A.*2d 230 (quoting *Stevens, supra,* 115 *N.J.* at 304, 558 *A.*2d 833). In this case, the court cautioned the jury that the evidence could not be used to conclude that defendant "is a bad person and thus has a disposition which shows he is likely to have done the act that he is presently charged with or showing general disposition to commit bad acts." The court further instructed the jury that the evidence was admitted "as it may bear on the issue of whether the alleged purpose in attempting to lure or induce [A.P.] to the motor vehicle was to commit a criminal offense with or against her or to obtain some sort of sexual gratification or as to show that there was no mistake about the defendant's actions." The court further commented that the jury had to decide whether the testimony had any

bearing on the issues of intent, purpose, absence of mistake or accident and that the jury could disregard the testimony if it found the testimony had no bearing on its deliberations. Those instructions are similar to the instructions given in *State v. Cusick*, *supra*, 219 *N.J.Super.* at 467, 530 *A.*2d 806 (cited with approval in *State v. Marrero*, *supra*, 148 *N.J.* at 495, 691 *A.*2d 293). Defendant did not object to the charge.

■ As the foregoing charge reflects, the jury was properly instructed on how it could use the other-conduct evidence. The evidence was limited to deciding only defendant's motive, intent, and state of mind. The court instructed the jury not to consider the other-conduct evidence for any other purpose. Finally, the court specifically prohibited the jury from using that evidence to infer that because of defendant's conduct on June 23, 1993, he had a propensity or a predisposition to commit a crime against A.P.

## V.

We conclude that the Appellate Division erred in reversing the trial court's decision to admit defendant's statement under *N.J.R.E.* 404(b). We further find that the statement also could have been admitted under *N.J.R.E.* 803(b)(1). Moreover, applying the balancing test of *N.J.R.E.* 403, the statement's probative value was not outweighed by its prejudicial effect on defendant.

Because defendant's other grounds for appeal of the trial court's decision, namely, that it erroneously denied defendant's motion for a judgment of acquittal and imposed a sentence not warranted by an appropriate balancing of aggravating and mitigating factors have no merit, we do not remand the case to the trial court. Instead, we reverse the judgment of the Appellate Division and reinstate defendant's conviction and sentence:

*For reversal and reinstatement*—Chief Justice PORITZ and Justices POLLOCK, O'HERN, GARIBALDI, STEIN, and COLEMAN—6.

*Opposed*—None.