**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1135-17T4

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

LAMAR HUNT,

    Defendant-Appellant.

_____

> Argued January 29, 2020 – Decided April 28, 2020
>
> Before Judges Whipple, Gooden Brown, and Mawla.
>
> On appeal from the Superior Court of New Jersey, Law Division, Essex County, Indictment No. 16-02-0414.
>
> Kelly Anderson Smith argued the cause for appellant.
>
> Caroline C. Galda, Special Deputy Attorney General/Acting Assistant Prosecutor, argued the cause for respondent (Theodore N. Stephens II, Acting Essex County Prosecutor, attorney; Caroline C. Galda, of counsel and on the brief).

PER CURIAM

Defendant Lamar Hunt appeals from his July 26, 2017 judgment of conviction for first-degree murder, N.J.S.A. 2C:11-3(a)(1) and (2), and two second-degree weapons possession offenses, N.J.S.A. 2C:39-5(b) and 4(a), following a five-day jury trial and the denial of his subsequent motion for a new trial. We affirm.

Defendant raises the following arguments on appeal.

POINT I.

THE TRIAL COURT ERRED IN FAILING TO SUPPRESS DEFENDANT'S STATEMENT. (Raised Below)

POINT II.

THE TRIAL COURT FAILED TO SUPPRESS IMPROPER, HIGHLY PREJUDICIAL [N.J.R.E.] 404(B) EVIDENCE. (Raised Below)

A. The Inclusion of Inflammatory Details Regarding an Unrelated Incident Served No Purpose But to Prejudice Jurors; Denying Defendant a Fair Trial.

POINT III.

THE TRIAL COURT'S INSUFFICIENT AND IMPROPER INSTRUCTIONS AND JURY CHARGES DENIED DEFENDANT A FAIR AND IMPARTIAL TRIAL. (Partially Raised Below)

A. The Court Failed to Charge the Lesser Included Offenses of Aggravated Manslaughter and Passion Provocation.

B. Defendant was further Prejudiced and Suffered Irreparable Harm When the Trial Court Failed to Provide the Jury with Limiting Instructions or Charge Regarding Prior Bad Act Testimony.

POINT IV.

THE CUMULATIVE ERRORS COMMITTED BY THE TRIAL COURT DENIED DEFENDANT A FAIR TRIAL AND RESULTED IN A MANIFEST INJUSTICE. (Partially Raised Below)

We glean the following facts from the trial record. Defendant and H.H.[1] were at a bar in Union Township on June 21, 2015. In a videotaped statement to police, H.H. stated that while at the bar, defendant saw her talking to a bouncer and made her leave with him in his vehicle. He then kicked her repeatedly in the face and stripped her down to her underwear as she tried to escape the vehicle.[2] H.H. stated that she set off a nearby car alarm which allowed her to escape as it startled defendant. Defendant drove away with H.H.'s purse and cell phone. Union Police found H.H., naked and bleeding, running

---

[1] Because H.H. was a victim of domestic violence we use initials to protect her privacy. Rule 1:38-3(c)(9).

[2] During the trial, H.H. recanted her prior statement and testified she was drunk and fell and defendant did not assault her. After a State v. Gross, 121 N.J. 1 (1990) hearing, the judge played H.H.'s videotaped statement to the jury.

A-1135-17T4

down the street and took her to the hospital where she was sedated and stayed overnight before giving a report to Union Police the next morning.

After driving away from H.H. in Union, defendant called Krystal Waller, another woman he was dating, and asked her to pick him up. Waller drove her mother's white Lexus, picked up defendant, and they proceeded to the White Castle in Irvington. H.H.'s phone was used to send numerous texts to lure Tavaris Payne, a man with whom H.H. had previously exchanged text messages, to the White Castle in Irvington under the guise that he was meeting H.H. Payne talked to his girlfriend on his phone while he waited at White Castle. Defendant arrived in the white Lexus shortly after midnight. Video surveillance of the scene showed a man exit a white Lexus and approach Payne. Payne was shot in the leg and throat. Payne then stumbled across the street, collapsed, and died. A passerby found Payne and called the police.

No suspects were arrested at the scene, however, because she feared her mother's car would appear in surveillance video, Waller called a tip line and alerted police about their proximity to the crime scene. She later admitted seeing defendant texting while she drove him to White Castle. Payne was murdered approximately ninety minutes after H.H. was assaulted.

Cell tower records placed H.H.'s phone in the same location as defendant's. Records revealed the timing was after H.H. was beaten, and en route to the hospital. H.H.'s description of her attacker matched a man police saw on video surveillance at the White Castle. The FBI Fugitive Task Force apprehended defendant on August 5, 2015.

While being interviewed at the Essex County Prosecutor's office, defendant was advised of his <u>Miranda</u>[3] rights and spoke with police. Detective Murad Muhammad took defendant's statements regarding the shooting. Defendant was shown photographs, including still photos of the victim and the shooter. He was questioned about the photographs and asked to sign and date them. The following conversation occurred:

> Defendant: Well why, why sign - - what for - - I mean, like - -
>
> Detective: No, no, no, I say you sign - - it's like I'm not switching no photographs or nothing like that. It's just that these are the photos that I showed you during this interview on this date.
>
> Defendant: Oh, okay.
>
> Detective: Okay? I want you to sign them.
>
> Defendant: Well, I don't - - I mean, - -

---

[3] <u>Miranda v. Arizona</u>, 384 U.S. 436 (1996).

Detective: If you don't want to sign them, you don't have to.

Defendant: I don't want to sign them, I don't. I mean, I believe my lawyer, she probably going to say I shouldn't have even spoke to you at all because I don't - - I'd be like I signed some pictures and then - -

Detective: No, okay, all right. Did - - all right. I read you your constitutional rights.

Defendant: Yes.

Detective: You said you that you wanted to talk to us, correct?

Defendant: Yeah.

Detective: Okay, and you provided me this statement, right?

Defendant: Yeah.

Detective: Okay. Voluntarily.

Defendant: Yeah, correct.

Detective: Okay. I, I - -

Defendant: No, I, I - -

Detective: - - you don't break no promises, I didn't threaten you with prom - -

Defendant: No, no, I'm not saying that. I'm just saying that - -

Detective: No, I just want to be clear.

6

> Defendant: No, we're good.
>
> Detective: Okay, all right, all right, that's it. Now I'll tell you what I'm going to do. I'm going to show you another photograph, okay? I'm going to show you - - this is going to be photo number five, okay?

Following this conversation, during the interview, defendant told the police he went to the White Castle to purchase Percocet pills from someone, but denied he was involved in the shooting.

Defendant moved to suppress his statements, arguing he invoked his right to remain silent, which police did not honor when they continued questioning. The court denied defendant's motion, finding defendant was advised of his rights and signed a waiver. Police did not begin questioning until the waiver was signed. When defendant referenced his attorney, although he did not ask for his attorney, police stopped the interview and only reinitiated the questioning after defendant reiterated his participation in the interview was voluntary. Police ceased questioning when defendant outright asked for his lawyer.

The judge also found defendant completed high school and trade school and understood his rights. Defendant was with police in the interview for forty-five minutes. Finally, the trial judge found the police did not use threats or trickery to induce defendant's cooperation.

7

Prior to trial, defendant also moved to exclude H.H.'s testimony regarding her account of the attack to police. The trial judge denied the motion applying the four-prong test of State v. Cofield, 127 N.J. 328, 338 (1992).

At trial, H.H. denied she was assaulted, her earlier videotaped statement was played for the jury, and defense counsel asked for a limiting instruction to be given. The judge agreed and gave the jury an instruction to only consider the evidence of H.H.'s assault as to defendant's motive, not as evidence of his propensity to act violently. The judge stated:

> In this case, evidence of the defendant's assault upon [H.H.] on the evening of June 21, 2015, can only be considered by the jury for the limited purposes of demonstrating a motive of jealousy on the part of defendant Lamar Hunt to murder Tavaris Payne, as well as to determine if the defendant had the opportunity to contact the victim by being in possession of [H.H.]'s cell phone.
>
> Whether this evidence does in fact demonstrate jealousy on the part of the defendant as a motive to murder Tavaris Payne, or opportunity to do so by utilizing [H.H.]'s cell phone, to arrange a pretextual meeting for the purpose of murdering Tavaris Payne, is for you to decide. You may decide that the evidence does not demonstrate jealousy as a motive for the defendant to murder Tavaris Payne, or opportunity to arrange a pretextual meeting, and is not helpful to you at all in this case. In that case, you must disregard the evidence.

A-1135-17T4

On the other hand, you may decide that the evidence does demonstrate jealousy on the part of the defendant and opportunity to arrange a meeting with the victim to use it for those specific purposes.

However, you may not use this evidence to decide that the defendant has a tendency to commit crimes or that he is a bad person. That is, you may not decide that just because the defendant has committed other crimes, wrongs, or acts, he must be guilty of the present crimes.

I have admitted the evidence only to help you decide the specific question of jealousy and opportunity to commit the alleged crimes. You may not consider it for any other purpose, and you may not find the defendant guilty now simply because the State has offered evidence that he committed other crimes, wrongs, or acts.

In his closing argument, the prosecutor emphasized the evidence of the beating was meant to address defendant's motive. The prosecutor stated:

[A]fter he had beaten her on the street, they went inside of his Jeep. And as he was strangling her where she couldn't breathe, her words, he stated admit to me you told Omar to call you.

. . . .

Her knees being ripped up and ended up in a hospital bed, black and blue[]. Black eye I believe is what she told detective on the statement.

. . . .

The Union Police didn't respond to Hillside when they saw [H.H.] in her underwear bleeding from her knees, bruising all over her face, screaming in the street, "my boyfriend Lamar just did this to me."

. . . .

Then after the police respond to Manor Drive. They find [H.H.] naked, beat up and saying that her boyfriend did it.

The defendant did not object to these statements at trial. The jury deliberated and returned a guilty verdict for all charges. Defendant filed a motion for a new trial which was denied. This appeal followed.

I.

We reject defendant's argument that his statement should have been suppressed. Our review of a trial court's decision on a motion to suppress is limited. State v. Robinson, 200 N.J. 1, 15 (2009). As our Supreme Court held:

> Appellate review of a motion judge's factual findings in a suppression hearing is highly deferential. We are obliged to uphold the motion judge's factual findings so long as sufficient credible evidence in the record supports those findings. Those factual findings are entitled to deference because the motion judge, unlike an appellate court, has the "opportunity to hear and see the witnesses and to have the 'feel' of the case, which a reviewing court cannot enjoy."
>
> [State v. Gonzales, 227 N.J. 77, 101 (2016) (internal citations omitted) (quoting State v. Johnson, 42 N.J. 146, 161 (1964)).]

10

We will "reverse only when the trial court's determination is 'so clearly mistaken that the interests of justice demand intervention and correction.'" State v. Gamble, 218 N.J. 412, 425 (2014) (quoting State v. Elders, 192 N.J. 224, 244 (2007)). However, we owe no deference to the trial court's legal conclusions or interpretations of the legal consequences flowing from established facts, and review questions of law de novo. State v. Watts, 223 N.J 503, 516 (2015).

"The right against self-incrimination is guaranteed by the Fifth Amendment of the United States Constitution and this State's common law, now embodied in statute N.J.S.A. 2A:84A-19, and evidence rule, N.J.R.E. 503." State v. L.H., 239 N.J. 22, 41 (2019). See also U.S. Const. amend. V ("No person . . . shall be compelled in any criminal case to be a witness against himself . . . ."). A defendant maintains this right during custodial interrogations. U.S. Const. amend. V; see also State v. Sanchez, 129 N.J. 261, 266 (1992). The privilege against self-incrimination "is fulfilled only when the person is guaranteed the right 'to remain silent unless he chooses to speak in the unfettered exercise of his own will.'" Miranda v. Arizona, 384 U.S. 436, 460 (1966) (quoting Malloy v. Hogan, 378 U.S. 1, 8 (1964)). As such, "a suspect subject to a custodial interrogation [must] 'be adequately and effectively apprised of his rights.'" L.H., 239 N.J. at 42 (quoting Miranda, 384 U.S. at 467).

A-1135-17T4

Statements provided after appropriate <u>Miranda</u> warnings are admissible if an individual waives his rights. <u>State v. Knight</u>, 183 N.J. 449, 461 (2005) (citing <u>Miranda</u>, 384 N.J. at 444); <u>see also</u> <u>State ex rel. A.S.</u>, 203 N.J. 131, 146 (2010). The waiver must be "voluntar[y], knowing[], and intelligent[]." <u>Ibid.</u> It is the State's burden to prove defendant waived his rights beyond a reasonable doubt. <u>Id.</u> at 462 (citing <u>State v. Galloway</u>, 133 N.J. 631, 654 (1993)); <u>State v. Adams</u>, 127 N.J. 438, 447 (1992) (citations omitted).

Determining whether the State met this burden requires the court to examine the "totality of the circumstances . . . ." <u>Galloway</u>, 133 N.J. at 654; <u>see also</u> <u>State v. Puchalski</u>, 45 N.J. 97, 106 (1965). "The voluntariness determination weighs the coercive psychological pressures brought to bear on an individual to speak against his power to resist confessing." <u>L.H.</u>, 239 N.J. at 43 (citing <u>Dickerson v. United States</u>, 530 U.S. 428, 434 (2000)).

Fundamentally, what is required is a fact-specific analysis to determine if the defendant's will was overborne by police coercion, or in other words, whether the confession was "the product of an essentially free and unconstrained choice by its maker . . . ." <u>State v. Presha</u>, 163 N.J. 304, 313 (2000); <u>Culombe v. Connecticut</u>, 367 U.S. 568, 602 (1961). However, where there is no waiver

12

and a defendant invokes his right to remain silent, it must be "scrupulously honored." Michigan v. Mosely, 423 U.S. 96, 104 (1975).

Defendant argued at trial his statements should have been excluded because he invoked his Sixth Amendment right to counsel. Now he argues they should have been excluded based on the invocation of his right to remain silent. He was in a custodial interrogation while in the police interview with detectives. These detectives apprised him of his Miranda rights and he signed a waiver of those rights.

He then spoke to police, at which point he expressed hesitation when asked to sign any photographs because his attorney probably would not want him speaking to the police. The detective ceased the questioning and asked him to confirm that he received his Miranda rights and was speaking to the police voluntarily. Defendant then answered in the affirmative and continued the interview. It was not until after he gave incriminating statements that he halted the interview and asked for his attorney.

Because defendant was properly advised of his rights and then signed a waiver of those rights, the court properly deemed his statements admissible. Defendant voluntarily continued to talk to police after his rights were read. Although he did not request to stop talking, the detectives did cease questioning

regarding the investigation and asked narrow questions to confirm he was voluntarily talking with them. The trial court applied the proper factors to determine that defendant's waiver was knowing, intelligent, and voluntary.

## II.

We also reject defendant's argument that the court erred by permitting the jury to hear details of the assault against H.H. N.J.R.E. 404(b) prohibits character evidence of other crimes, wrongs, or acts

> to prove the disposition of a person in order to show that such person acted in conformity therewith. Such evidence may be admitted for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident when such matters are relevant to a material issue in dispute.

"The underlying danger of admitting other-crime evidence is that the jury may convict the defendant because he is a bad person in general." Cofield, 127 N.J. at 336 (internal quotations omitted) (quoting State v. Gibbons, 105 N.J. 67, 77 (1987)); see also State v. G.S., 145 N.J. 460, 468 (1966) (finding evidence of other crimes are dangerous because "it will distract a jury from an independent consideration of the evidence that bears directly on guilt itself.").

"The admissibility of other-crime evidence is left to the discretion of the trial court . . . 'because of its intimate knowledge of the case, [it] is in the best

A-1135-17T4

position to engage in this balancing process.'" State v. Covell, 157 N.J. 554, 564 (1999). To determine if the wrong or act warrants an exception to N.J.R.E. 404(b) and should be admissible, the court must employ a four-part test. Cofield, 127 N.J. at 338. The act is admissible if: (1) the evidence of the act is relevant to a material issue; (2) it is similar in kind and reasonably close in time to the offense; (3) it is clear and convincing; and (4) the probative value of the evidence is not outweighed by its apparent prejudice. Ibid. (citation omitted).

Under the first prong, "evidence is relevant if it tends 'to prove or disprove any fact of consequence to the determination of the action.'" Covell 157 N.J. at 565. "[T]he inquiry should focus on the 'logical connection between the proffered evidence and a fact in issue.'" Covell, 157 N.J. at 565 (citation omitted). Moreover, "the material issue must be genuinely disputed." Cofield, 127 N.J. at 338; see also Covell, 157 N.J. at 564-65; State v. Stevens, 115 N.J. 289, 301 (1989). Evidence included in this prong could be that which "'tend[s] to shed light' on a defendant's motive and intent or which 'tend[s] fairly to explain his actions,' even though they may have occurred before the commission of the offense." Covell, 157 N.J. at 565 (quoting State v. Rodgers, 19 N.J. 218, 228 (1955)).

"[T]he second prong . . . may be eliminated where it serves no beneficial purpose." State v. Gillispie, 208 N.J. 59, 89 (2011) (quoting State v. Barden, 195 N.J. 375, 389 (2008)). Courts are required to use the second prong of Cofield only in limited cases such as when evidence of drug possession occurred subsequent to the drug incident that was the subject of prosecution. Id. at 88-89.

Regarding the third prong, "the trial court must determine that proof of the other-crimes evidence is established clearly and convincingly." Id. at 89. Evidence is "clear and convincing" when it

> "produce[s] in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established," evidence "so clear, direct and weighty and convincing as to enable [the factfinder] to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue."
>
> [State v. Hodge, 95 N.J. 369, 376 (1984) (quoting In re Boardwalk Regency Casino License Application, 180 N.J. Super 324, 339 (App. Div. 1981)).]

Finally, under the fourth prong of the Cofield test, the court must apply the balancing test of N.J.R.E. 403, which "excludes evidence if 'its probative value is substantially outweighed by the risk of . . . undue prejudice.'" Covell, 157 N.J. at 568. "[T]he admissibility of such evidence falls largely within a judge's discretion and '[h]is discretion is a broad one.'" Id. at 568-69 (second

alteration in original) (quoting State v. Sands, 76 N.J. 127, 144 (1978)). "[T]he party seeking to admit other-crimes evidence bears the burden of establishing that the probative value of the evidence is not outweighed by its apparent prejudice." State v. Reddish, 181 N.J. 553, 608-09 (citing State v. Long, 173 N.J. 138, 162 (2002)). The more attenuated or remote the act, the less likely it is probative. See Covell, 157 N.J. at 569. Finally, "[p]robative value is enhanced by the absence of any other evidence that can prove the same point." Ibid.

The evidence of H.H.'s assault was prejudicial evidence of another crime. However, it was admitted as evidence of motive and opportunity. The judge advised the jury in his limiting instruction that the evidence of the assault could only be used as evidence of jealousy and motive or opportunity and not as evidence of his propensity to be violent or for any other purpose.

The trial court properly applied the Cofield elements and found the evidence admissible. Under the first prong, the evidence is relevant because it revealed the intense jealousy that could have motivated defendant to murder the victim. Under the second prong, the temporal proximity was met because the assault and the murder were within two hours of each other. Third, the trial court determined the evidence was clear and convincing because H.H.'s account

of the beating placed the phone in defendant's car, making it impossible for her to be the one texting Payne to meet up that night. Finally, the evidence's probative value outweighed the prejudice because the abandoned cell phone was the only connection linking defendant to the victim, a fact which is a genuine dispute of the case.

Similarly, we reject defendant's assertion that the prosecutor's comments about H.H.'s assault during summation constituted misconduct. "[P]rosecutorial misconduct can be a ground for reversal where the prosecutor's misconduct was so egregious that it deprived the defendant of a fair trial." State v. Frost, 158 N.J. 76, 83 (1999) (citing State v. Ramseur, 106 N.J. 123, 322 (1987)). Prosecutors have a "duty to refrain from improper methods calculated to produce a wrongful conviction . . . ." Berger v. United States, 295 U.S. 78, 88 (1935).

However, "it is well-established that prosecuting attorneys, within reasonable limitations, are afforded considerable leeway in making opening statements and summations." State v. Wakefield, 190 N.J. 397, 443 (2007) (quoting State v. DiFrisco, 137 N.J. 434, 474 (1994)). There is no error so long as the prosecutor confines himself to comments about "'facts shown by or reasonably to be inferred from the evidence.'" State v. R.B., 183 N.J. 308, 330 (2005) (quoting State v. Carter, 91 N.J. 86, 125 (1982)). "Prosecutors can sum

up cases with force and vigor, . . . so long as their comments are 'reasonably related to the scope of the evidence presented.'" State v. Pressley, 232 N.J. 587, 593 (2018) (quoting State v. Timmendequas, 161 N.J. 515, 587 (1999)). "'Ultimately, it [is] for the jury to decide whether to draw the inferences the prosecutor urged.'" R.B., 183 N.J. at 330 (quoting Carter, 91 N.J. at 125).

"A finding of prosecutorial misconduct does not end a reviewing court's inquiry because, in order to justify reversal, the misconduct must have been 'so egregious that it deprived the defendant of a fair trial.'" State v. Smith, 167 N.J. 158, 181 (2001) (quoting Frost, 158 N.J. at 83). "[A]n appellate court must consider (1) whether defense counsel made timely and proper objections to the improper remarks; (2) whether the remarks were withdrawn promptly; and (3) whether the court ordered the remarks stricken from the record and instructed the jury to disregard them." Frost, 158 N.J. at 83 (citations omitted).

"Generally, if no objection was made to the improper remarks, the remarks will not be deemed prejudicial." Id. at 83-84 (citing Ramseur, 106 N.J. at 323); see also State v. Atkins, 405 N.J. Super. 392, 401 (App. Div. 2009); State v. W.L., 292 N.J. Super. 100, 110 (App. Div. 1996). "[W]hen counsel does not make a timely objection at trial, it is a sign 'that defense counsel did not believe

the remarks were prejudicial' when they were made." Pressley, 232 N.J. at 594 (quoting State v. Echols, 199 N.J. 344, 360 (2009)).

In this case, defendant did not object to the prosecutor's remarks during summation. Moreover, in his closing argument, the prosecutor reiterated the appropriate use for the remarks relating to the assault on H.H. and presented facts which were already in the record. Since prosecutors "are afforded considerable leeway" during summations, we do not consider the comments so egregious as to deprive the defendant of a fair trial.

III.

We are also not persuaded by defendant's argument that the judge's charge to the jury was insufficient and improper. Under Rule 1:7-2, "a defendant is required to challenge instructions at the time of trial or else waives the right to contest the instructions on appeal." State v. Belliard, 415 N.J. Super. 51, 66 (App. Div. 2010) (citing State v. Adams, 194 N.J. 186, 206-07 (2008)). "Where there is a failure to object, it may be presumed that the instructions were adequate." Ibid. The burden of demonstrating legal impropriety in jury charges rests on the defendant. State v. Koskovich, 168 N.J. 448, 529 (2001).

"A trial court's decision to charge on a lesser-included offense is governed by N.J.S.A. 2C:1-8(e)." State v. Alexander, 233 N.J. 132, 142 (2018). The

statute states, "[t]he court shall not charge the jury with respect to an included offense unless there is a rational basis for a verdict convicting the defendant of the included offense." N.J.S.A. 2C:1-8(e). The inquiry is "'whether the evidence presents a rational basis on which the jury could acquit the defendant of the greater charge and convict the defendant of the lesser.'" Alexander, 233 N.J. at 142 (citation omitted); see also State v. Jenkins, 178 N.J. 347, 361 (2004); State v. Choice, 98 N.J. 395, 299 (1985); State v. Powell, 84 N.J. 305, 413-14 (1980).

The lesser-included offense of murder is aggravated manslaughter. See N.J.S.A. 2C:11-4(a). N.J.S.A. 2C:11-4(a) states "[c]riminal homicide constitutes aggravated manslaughter when . . . [t]he actor recklessly causes death under circumstances manifesting extreme indifference to human life . . . ." To be guilty of murder, "the defendant must have knowingly or purposefully inflicted serious bodily injury with actual knowledge that the injury created a substantial risk of death and it was 'highly probable' that death would result." Jenkins, 178 N.J. at 363 (citation omitted). "In aggravated manslaughter, by contrast, the defendant must have caused death with an 'awareness and conscious disregard of the probability of death.'" Ibid. (citations omitted).

21

Here, defendant shot Payne in the leg and throat, killing him. Defendant intentionally shot the victim with knowledge that this serious bodily injury was likely to lead to death. A reasonable jury would not find that defendant intentionally shot the victim without knowledge that it was likely to result in a substantial risk of death. The trial court was not required to instruct the jury on the lesser-included charge of manslaughter because the record supports the conclusion that the facts of this case could not lead a reasonable jury to convict on aggravated manslaughter and acquit on murder.

Moreover, we reject the argument the court should have instructed the jury on the lesser-included offense of passion/provocation manslaughter. N.J.S.A. 2C:11-4(b)(2). N.J.S.A. 2C:11-4(b)(2) states "[c]riminal homicide constitutes manslaughter when . . . committed in the heat of passion resulting from a reasonable provocation." It is "[a] homicide which would otherwise be murder . . . committed in the heat of passion resulting from reasonable provocation." State v. Mauricio, 117 N.J. 402, 411 (1990) (alteration in original). There are four elements to this crime: (1) provocation was adequate; (2) the defendant did not have time to cool off between the provocation and homicide; (3) the provocation actually impassioned the defendant; and (4) defendant did not cool

22

off.  Ibid.  "The first two criteria are objective, [and] the other two are subjective."  Ibid.

Here, defendant was not adequately provoked because a reasonable person would not be provoked by witnessing a girlfriend talking to a bouncer at a bar and then shoot a third person.  Moreover, there was a reasonable cooling off period of nearly two hours between when defendant saw H.H. speaking with the bouncer and when the slaying occurred.

IV.

Defendant's final argument that he was denied an unfair trial because the errors he raises on appeal cumulatively amounted to a manifest injustice also fails.  Our Supreme Court "recognized that the cumulative effect of small errors may be so great as to work prejudice, and we have not hesitated to afford the party suffering that prejudice relief where it has been warranted."  Pellicer ex rel. Pellicer v. St. Barnabas Hosp., 200 N.J. 22, 53 (2009).

Here, we discern no errors, as discussed above.  As such, defendant's cumulative error argument is without merit.  R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1135-17T4