**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0427-16T1

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

JOSE MEDINA,

    Defendant-Appellant.

_____

Submitted March 21, 2018 – Decided September 14, 2018
Remanded by Supreme Court June 9, 2020
Resubmitted July 2, 2020 – Decided July 24, 2020

Before Judges Fuentes, Koblitz and Suter.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Indictment No. 14-09-2344.

Robert Carter Pierce, attorney for appellant.

Theodore N. Stephens II, Acting Essex County Prosecutor, attorney for respondent (Tiffany M. Russo, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Jose Medina was tried before a jury and convicted of second degree aggravated assault, N.J.S.A. 2C:12-1b(1), fourth degree unlawful possession of a weapon, N.J.S.A. 2C:39-5d, third degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4d, and third degree aggravated assault, N.J.S.A. 2C:12-1b(2). In State v. Medina, A-0427-16T1 (App. Div. September 14, 2018), this court held that "the trial judge committed reversible error when he allowed the State to rely on unverifiable hearsay testimony to create the photo-array used by Rivera to identify defendant as his attacker. This error irreparably tainted the reliability of the jury's verdict and violated defendant's right to a fair trial." Slip op. at 4. We thus declined to address the other arguments defendant raised on direct appeal and remanded the matter for a new trial.

The Supreme Court granted the State's petition for certification limited to the legal issue: "Under the circumstances presented, did testimony elicited by the State concerning an anonymous female who spoke to police at the scene violate State v. Bankston, 63 N.J. 263 (1973)." State v. Medina, 237 N.J. 419 (2019). On June 9, 2020, the Supreme Court issued its decision reversing this court's decision and held the officer's testimony that described how he created the photo array based, in part, on information from an anonymous woman, did not improperly implicate defendant in the crime. State v. Medina, ____ N.J.

____, ____ (2020), slip op. at 2-3.  The Court thus remanded the matter for this court to address the following remaining arguments defendant raised on direct appeal:

> POINT II
>
> THE TRIAL COURT ERRED BY RULING THAT THE VIDEOTAPE WAS NOT UNDULY PREJUDICIAL.
>
> POINT III
>
> THE TRIAL COURT ERRED BY FINDING THE VIDEOTAPE ADMISSIBLE BECAUSE THE VIDEOTAPE DOES NOT DEPICT RIVERA BEING IN A FIGHT WITH MR. MEDINA AND THE VIDEO CANNOT BE AUTHENTICATED.
>
> POINT IV
>
> THE TRIAL COURT ERRED BY OVERRULING DEFENDANT'S OBJECTION TO THE PROSECUTOR'S QUESTION TO THE VICTIM DESIGNED TO ELICIT TESTIMONY THAT THE VICTIM WAS AFRAID OF WHAT THE DEFENDANT WILL DO TO THE VICTIM AFTER THE TRIAL.

After reviewing the briefs submitted by the parties and the record developed before the trial court, we affirm.  We incorporate by reference the facts we described at length in our first opinion.  Medina, A-000427-16T1 at 4-20.

I

In argument Point II, defendant challenges the trial court's decision to admit into evidence a video recording of an earlier bar brawl between defendant and the victim. The State sought to admit this video recording into evidence under N.J.R.E. 404(b). The judge declined to admit the video under N.J.R.E. 404(b) because it did not show defendant committed a "prior bad act" against Rivera, the victim in this case. However, the judge found sufficient grounds to admit the video as an exception to the hearsay rule under N.J.R.E. 803(a)(3).[1] In the judge's view, the video could be used to support Rivera's identification of defendant as the person who assaulted him in this case.

We hold the trial judge did not err in admitting the video. However, we also conclude the video was admissible under N.J.R.E. 404(b), not N.J.R.E. 803(a)(3). Under N.J.R.E. 404(b), evidence of "other crimes, wrongs, or acts" is not admissible to prove a person's propensity to commit a crime. However,

---

[1] Pursuant to N.J.R.E. 803(a)(3), the following statements are not excluded by the hearsay rule:

> The declarant witness testifies and is subject to cross-examination about a prior otherwise admissible statement, and the statement:
>
> . . . .
>
> (3) is a prior identification of a person made after perceiving that person if made in circumstances precluding unfairness or unreliability.

such evidence may be admitted for other purposes, including "proof of motive . . . [or] identity . . . when such matters are relevant to a material issue in dispute." N.J.R.E. 404(b). Generally, this evidence is admissible "only if it is relevant to prove a fact genuinely in dispute 'and the evidence is necessary as proof of the disputed issue.'" State v. Darby, 174 N.J. 509, 518 (2002) (quoting State v. Hernandez, 170 N.J. 106, 118-19 (2001)). Because N.J.R.E. 404(b) is a rule of exclusion, the court must provide clear limiting instructions to the jury to guard against the jury's viewing of this evidence as proof of defendant's proclivity for violence or antisocial behavior. State v. Skinner, 218 N.J. 496, 514 (2014) (citing State v. Rose, 206 N.J. 141, 179-80 (2011)).

In State v. Cofield, the Supreme Court created a four-part test for determining the admissibility of this evidence: (1) the evidence of the other crime must be admissible as relevant to a material issue; (2) [the evidence] must be similar in kind and reasonably close in time to the offense charged; (3) [t]he evidence of the other crime must be clear and convincing; and (4) [t]he probative value of the evidence must not be outweighed by its apparent prejudice. 127 N.J. 328, 338 (1992). Although the Cofield Court mentioned only "other crimes," the test applies to "other wrongs or acts," which are clearly mentioned in N.J.R.E. 404(b). See Skinner, 218 N.J. at 517 (applying the factors to determine the admissibility of the defendant's violent and disturbing rap lyrics); State v.

5

<u>Covell</u>, 157 N.J. 554, 570 (1999) (applying the factors to determine the admissibility of the defendant's statements to police regarding his sexual interest in young girls).

The first <u>Cofield</u> factor requires the evidence to be relevant to a material issue. Such evidence is relevant if it tends "to prove or disprove any fact of consequence to the determination of the action." N.J.R.E. 401. This inquiry focuses on "the logical connection between the proffered evidence and a fact in issue." <u>State v. Hutchins</u>, 241 N.J. Super. 353, 358 (App. Div. 1990). "If the evidence offered makes the inference to be drawn more logical, then the evidence should be admitted unless otherwise excludable by a rule of law." <u>Covell</u>, 157 N.J. at 565. Our courts usually "admit a wider range of evidence when the motive or intent of the accused is material." <u>Ibid.</u> (citing <u>State v. Rogers</u>, 19 N.J. 218, 228 (1955)). Here, the video is relevant and material evidence of defendant's motive for slashing Rivera in the face, and it also helps explain how Rivera positively identified defendant as the person who attacked him in this fashion.

The video depicts a brawl in which both defendant and Rivera were involved. It helps explain how Rivera could identify defendant in the photo array. Once Rivera saw the photo array, he was able to identify defendant as the person who slashed him in this case and as the person with whom he fought

at Club Yesterday's about a month earlier.  The video is therefore relevant and necessary to explain how Rivera could make this connection.  Without the video, it would be difficult to ascertain how Rivera was able to positively identify defendant in the photo array since he was not able to clearly identify him at the time of the slashing.

The video is also relevant to defendant's motive for slashing Rivera in the face.  According to Rivera, the assailant said "you remember me" before slashing him with a knife or some other type of sharp-edge weapon.  This supports the State's theory of culpability, which is based on defendant having had at least one prior belligerent encounter with Rivera.  The video puts the attack in this case into context by connecting it to the previous brawl and showing Rivera and defendant were involved in both incidents.  The jury could consider the menacing antecedent statement - "you remember me" - as indicative of a revenge motive and as supportive of Rivera's identification of defendant as the assailant.

The video of the first brawl shows defendant was struck on the head with a glass bottle during the melee, plausibly by Rivera.  Rivera testified he exchanged punches with defendant.  In short, the video provides the jury with relevant evidence of defendant's possible motive for attacking Rivera with a knife or some other sharp-edged weapon on the night of this incident.  Thus, the

video is evidence of another "bad act" which is relevant to a material issue and satisfies the first factor of the Cofield test. 127 N.J. at 338.

Addressing the second factor, the video is similar in kind and involves an event that occurred reasonably close in time to the offense charged. Ibid. The video shows defendant involved in a violent bar brawl with the victim. The incident at issue here occurred approximately six weeks after the altercation depicted in the video. These characteristics are enough to satisfy the second Cofield factor.

The judge conducted a N.J.R.E. 104 evidentiary hearing to address the third Cofield factor. At this hearing, the State is required to prove defendant's responsibility for the prior offense. State v. Hernandez, 170 N.J. 106, 128-29 (2001); State v. Harvey, 121 N.J. 407, 433 (1990). In response to defense counsel's second attempt to exclude the video, the judge found the State did not meet its burden of proof and denied the motion to admit the video under N.J.R.E. 404(b). The judge found the video was too "chaotic," and did not show evidence of a prior bad act committed by defendant. We disagree. The State offered the video for the limited purpose of showing defendant's motive and to identify him as one of the combatants. The video provided clear and convincing evidence that defendant was involved in a bar fight with Rivera and his friends weeks before the incident that gave rise to the charges in this case.

The State introduced the video at the N.J.R.E. 104 hearing during the testimony of Ventura, one of Rivera's friends who was involved in the bar fight. Ventura identified defendant in the video as one of the combatants and testified that Rivera was there as well, although he does not appear in the video. According to Ventura, Rivera was pulled out of the fight before the video began. Ventura identified the person wearing the white shirt in the video as defendant. He then confirmed that the person seen in the video was the same man identified as defendant, who was seated in the courtroom. Ventura identified defendant as the person who had blood on his shirt towards the conclusion of the video; and the same person who attempted to hit other combatants with glass bottles.

Ventura testified that the video accurately depicts the altercation from nearly its inception, to the time the police responded to the scene. He also acknowledged that the video did not capture the actual start of the fight. Rivera testified that he does not appear in the video at any time because he was in an area of the venue that was not within the scope of the camera. He was also uncertain about whether he and defendant exchanged blows during the fight.

The purpose of the video was simply to show that defendant was involved in a bar fight with Rivera and his friends. The video, in conjunction with the testimony from Ventura, provides clear and convincing evidence that defendant was present at the bar and engaged in a fight with Rivera and his friends.

A-0427-16T1

Although the video of the bar may be "chaotic," it still serves the limited purpose of showing defendant's previous interaction with Rivera and Ventura. Therefore, the video satisfies the third Cofield factor.

The fourth Cofield factor requires an analysis similar to the balancing test required under N.J.R.E. 403. Under this approach, evidence may be excluded if "its probative value is substantially outweighed by the risk of . . . undue prejudice." N.J.R.E. 403. The weighing process falls largely within the trial judge's broad discretionary authority. State v. Sands, 76 N.J. 127, 144 (1978). A determination under N.J.R.E. 403 will not be overturned on appeal absent an abuse of discretion that is "so wide of the mark that a manifest denial of justice resulted." Green v. N.J. Mfrs. Inc. Co., 160 N.J. 480, 492 (1999). The party seeking this relief must show a "clear error of judgment" for the determination to be overturned. State v. Koedatich, 112 N.J. 225, 313 (1988).

One aspect that should be considered is the availability of other evidence that can prove the same point. "Probative value is enhanced by the absence of any other evidence that can prove the same point." Covell, 157 N.J. at 569. See also State v. Stevens, 115 N.J. 289, 303 (1989). If there is other non-inflammatory evidence, the proposed evidence loses probative value. Ibid. See also State v. Johnson, 120 N.J. 263, 298 (1990); State v. Davis, 116 N.J. 341, 366 (1989). However, evidence of motive or intent "require[s] a very strong

showing of prejudice to justify exclusion." Covell, 157 N.J. at 570; see also State v. Carter, 91 N.J. 86, 106 (1982); State v. Rogers, 19 N.J. 218, 228 (1955). The trial court should also consider the "remoteness" of the evidence. Rogers, 19 N.J. at 228. "[T]he more attenuated and the less probative the evidence, the more appropriate it is for a judge to exclude it." State v. Medina, 201 N.J. Super. 565, 580 (App. Div. 1985). Here, the trial court ruled that "the prior contact evidence is highly relevant and not unduly prejudicial." We are bound to abide by this determination absent an abuse of discretion. Green, 160 N.J. at 492.

When evidence is admitted under N.J.R.E. 404(b), the trial judge must provide limiting instructions that "explain precisely the permitted and prohibited purposes of the evidence, with sufficient reference to the factual context of the case to enable the jury to comprehend and appreciate the fine distinction to which it is required to adhere." State v. Gillispie, 208 N.J. 59, 92-93 (2011) (quoting Cofield, 127 N.J. at 340-41).

The judge provided limiting instructions on two occasions during trial. The first time was when the bar fight was discussed before the jury during the testimony of Bellville Police Detective Anthony Abate. Defense counsel did not introduce the video into evidence at this point. However, when defense counsel cross-examined Detective Abate about the fight, the trial judge provided the jury with the following sua sponte limiting instructions:

11

You're hearing evidence elicited about some prior activity a month or two before in the bar in Clifton. All right? Normally, evidence like that is not admissible in a case like this, it has to do with another incident. But I'm allowing it to be introduced in this particular case solely for the sole purpose of establishing identity and motive. All right?

That's the only way it could be used. I don't want you to use that evidence saying these are bad people because they're fighting - - it has nothing to do with it. The only two issues here are identity and motive. That's the only reason they're being introduced. All right?

The judge provided the following limiting instructions when the prosecutor moved to introduce the video into evidence during Ventura's direct testimony:

Ladies and gentlemen, let me explain it to you again, I mentioned it the other day. I'm [going to] mention it to you again. There is a contention that [Rivera], the alleged victim in this case, and [defendant], the accused in this case, were at that location on that particular night.

Now, what is important is whether or not they saw each other there. All right? The only purpose of this evidence is to address the question of identity - - whether [defendant] was the person who allegedly assaulted [Rivera] six weeks later on in Belleville. All right? That's the only purpose. So, the limited purpose of this video is not to decide who's right or who's wrong on that video. That's irrelevant.

The purpose of that video is to determine two things, actually: The identity, and maybe some motive that was involved here. All right? That's the limited purpose of it and only - - only that limited purpose. All right? So,

12

> I don't want you to make a bigger deal out of it than it is, but that's the purpose of why it's being admitted.

Ventura identified defendant in the video and described what occurred during the incident using the video as a visual aid.

The judge explained to the jurors through these instructions the limited purpose of this type of evidence and admonished them "not to decide who's right or who's wrong [based] on that video." The instructions provided the jurors with a roadmap to follow in order to place this evidence in its proper context. State v. G.S., 145 N.J. 460, 472 (1996).

Defendant nevertheless argues the evidence should have been excluded because it was highly prejudicial and had minimal probative value. He claims Rivera cannot be identified in the video and depicts defendant "as a combatant in a violent bar fight[.]" Defendant's arguments miss the point. The video does not need to depict Rivera and defendant engaged in an actual fight to have probative value in the current case. The probative value of the video is based on what it shows - defendant engaged in a bar brawl with Rivera and his friends in a setting similar to the place where the slashing incident occurred. The video was admitted for the purpose of establishing defendant's motive for slashing Rivera and to explain how Rivera was able to identify defendant. This is also the legal basis for the trial judge's decision to issue cautionary, limiting language as a prelude to the video's presentation to the jury.

13

The Supreme Court has stated "other-crimes evidence should not be admitted solely to bolster the credibility of a witness against a defendant." State v. P.S., 202 N.J. 232, 256 (2010) (citing Darby, 174 N.J. at 520). Although not mentioned by defendant, we recognized that the video also bolstered the credibility of Ventura's testimony. However, Ventura could have testified about defendant's involvement in the fight without actually referring to the video. Although defendant correctly points out that the video depicts him as a combatant in a bar fight, this alone is not enough to exclude the video under N.J.R.E. 403 or N.J.R.E. 404(b).

The record shows the trial judge appreciated the prejudicial effect of the video and limited the parts that were shown to the jury. The judge disallowed the State's application to play to the jury the audio component of the video and excluded other parts altogether as irrelevant or highly inflammatory. For example, the judge excluded a part of the video that shows defendant attempting to throw a chair; and disallowed the end of the video that shows defendant's shirt covered in blood as he throws liquor bottles. The judge admonished counsel that the "[the jury's] function in this case is for you to persuade them that both of them were there and they saw each other for identification. That's all. What their activities were there, and what their culpability was there, is of no moment whatsoever. You're going to take that out." (emphasis added).

14

In this light, we conclude the trial judge did not abuse his discretion when he found the video's probative value substantially outweighed its prejudicial effect. The judge provided the jury with appropriate and timely limiting instructions. The admission of the video was not a "clear error of judgment," warranting reversal. Koedatich, 112 N.J. at 313.

Defendant also contends that the trial court erred in admitting the video because it could not be authenticated. Videos are considered equivalent to photographs under N.J.R.E. 1001(b). They must be authenticated under N.J.R.E. 901, which states that to satisfy the "requirement of authenticating . . . an item of evidence, the proponent must present evidence sufficient to support a finding that the item is what its proponent claims." "[T]he authentication of a video is a direct offshoot of the authentication of photographic and motion picture evidence." State v. Wilson, 135 N.J. 4, 16 (1994).

In Wilson, the Supreme Court held:

> The person testifying need not be the photographer, because the ultimate object of an authentication is to establish its accuracy or correctness. To that end, any person with the requisite knowledge of the facts presented in the photograph or videotape may authenticate it. An authenticator need not even have been present at the time the photograph was taken, so long as the witness can verify that the photograph accurately represents its subject.
>
> [135 N.J. at 15 (internal citations omitted)].

To authenticate a video, the testimony at trial must establish that: (1) the video "is an accurate reproduction of what it purports to represent; and (2) the reproduction is of the scene at the time of the incident in question, or in the alternative, the scene has not changed between the time of the incident in question and the time of the taking of the photograph. " Id. at 15 (citing Garafola v. Rosecliff Realty Co., Inc., 24 N.J. Super. 28, 42 (App. Div. 1952)).

Here, the video of the bar fight meets the requirements articulated in Wilson. Ventura, who was involved in the altercation, testified regarding the contents of the video. Ventura testified the video accurately depicted what he recalled happened that night. He used the video to describe the fight and to identify most of the people involved. Ventura and defendant were both depicted in the video.

Finally, defendant argues the video was "taken from a cell phone by an unknown person at an unknown date and time and, therefore, cannot be authenticated." These concerns have no bearing on the authentication analysis. The identity of the person who took the video is irrelevant and there is no dispute as to the date or time of the incident.

## II

Defendant argues the trial judge erred when he overruled defendant's objection to the prosecutor's question to Rivera about whether he was afraid of

what defendant could do to him after trial. The prosecutor introduced this intimidation issue when he asked Rivera the following questions on re-direct examination:

Q. So - - are you nervous right now? How do you feel right now?

A. Ah, a little nervous.

Q. How about when you testified at the Grand Jury? How would you describe how you felt?

A. Ah, I was - - I was nervous, too.

Q. So, why are you nervous right now?

A. Ah, I - - just sitting here and just thinking about like what - - just always thinking about what's going on, my face getting sliced, everything just coming back to me.

Q. What about at the Grand Jury? Why were you nervous then?

A. Ah, just the same thing. Just always - - this just bringing me back memories of the day I'm getting sliced and just picturing, remembering everything.

Q. What is it hard sitting here in front of a lot of people talking about this --

DEFENSE COUNSEL: Judge, he's putting words in his mouth and I think we've explored this issue.

THE COURT: Sustained.

Q. Anything else about what's happening here that's making you nervous?

17

DEFENSE COUNSEL: Objection.

THE COURT: Overruled.

A. Ah, yes.

Q. What?

A. Ah, I don't know, whatever could happen after court
or anything - -

At this point, defense counsel again objected and requested a sidebar

conference.   The following exchange occurred at sidebar:

DEFENSE COUNSEL: The jury's [going to] interpret
that as he's [going to] be threatened and we're getting
. . . we're getting into an area here which is very
dangerous because, at this point, if he says anything
further I'm [going to] move for a mistrial.

PROSECUTOR: There's nothing else he's [going to]
elicit, aside from the fact that –

THE COURT: All right.  Let's deal with what we have
in front of us.  First of all, the answer was inappropriate
and it tends to convey to the jury that he's afraid of some
physical . . . repercussions as a result of his testimony
here. I think that's an actual conclusion the jury could
reach.  As a result of that, I'm [going to] . . . on proper
application, I will strike it from the jury.

Defense counsel accepted the judge's invitation and moved to strike the

witness' testimony.  The prosecutor did not object.  The following comments

were made before the jury:

PROSECUTOR:  Judge, would you like to give that
instruction now?

18

THE COURT: Yeah, I will. The question posed by [the prosecutor] was a very legitimate question: ["]What else is making you nervous here today.["] All right? The answer provided by Mr. Rivera was not appropriate.

. . . .

That statement, itself, I'm striking from the record. You're not to consider it. Now, when I say this to you, here's what I'm saying to you. I direct that you not use this stricken testimony in your deliberations. By my striking the answer and directing that you disregard and not use this information, I am not asking you to forget it, because that's beyond the mental abilities of most human beings. To the contrary, I'm asking you to remember what was stricken and understand that if, during your deliberations, you realize that the information is necessary to your decision, you may not use it. It's stricken. All right?

The State argues that "since this issue was already appropriately remedied by the trial court, defendant should not receive an additional remedy from the Appellate Division."

Curative instructions may be used to remedy the admission of inadmissible evidence by the trial court. State v. Prall, 231 N.J. 567, 586 (2018) (citing State v. Winter, 96 N.J. 640, 646 (1984)). "An effective curative instruction needs to be 'firm, clear, and accomplished without delay.'" Ibid. (quoting State v. Vallejo, 198 N.J. 122, 134 (2009)). Stated differently, inadmissible testimony can cause reversible error if the curative instruction is

19

not provided immediately or it is not clear as to what evidence was improperly heard at trial. cf. State v. Wakefield, 190 N.J. 397, 452 (2007) (noting trial court issued "immediate curative instruction" to address impropriety "promptly and effectively").

The effectiveness of curative instructions is measured by how well it realistically dealt with the potential prejudice caused by the inappropriate testimony, not by pretending the judge's instructions magically erased the improper testimony from the jurors' memories. Here, the judge's curative instructions were timely and clear. The instructions provided the jury with unambiguous guidance on how it should consider the witness's inappropriate comments if they resurfaced in the midst of deliberations. The judge correctly confronted the reality of the error without equivocation. We are satisfied that this error was not "sufficient to raise a reasonable doubt as to whether it led the jury to a result it otherwise might not have reached." State v. Daniels, 182 N.J. 80, 95 (2004) (quoting State v. Macon, 57 N.J. 325, 333 (1971)). In light of the Supreme Court's decision reversing this court's prior decision, we discern no other legal basis to disturb defendant's conviction.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0427-16T1